Filed 7/11/14  Onley v. Schneider Nat. Cariers CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BETTY ONLEY, | |
| Cross-Complainant and Respondent, | E057311 |
| v. | (Super.Ct.No. RIC10020226) |
| SCHNEIDER NATIONAL CARRIERS, INC. et al., | **OPINION** |
| Cross-Defendants and Appellants; | |
| GAMANIAL JEKISONDAS SHAH, | |
| Cross-Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Sharon J. Waters, Judge.

Dismissed.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Joshua S. Lipschutz, and

Joseph R. Rose for Cross-Defendants and Appellants.

Dabney Finch for Cross-Complainant and Respondent Betty Onley.

1

Horton, Oberrecht, Kirkpatrick & Martha and Kimberly S. Oberrecht for Cross-Defendant and Respondent Gamanial Jekisondas Shah.

After a truck-versus-car-versus-car accident, plaintiff Jaishree Sheth was rendered quadriplegic; she regained some use of her limbs, but she remains in constant pain, and she requires 24-hour care. Her husband, plaintiff Prakash Sheth, suffered lesser injuries. Plaintiff Betty Onley lost most of the use of her right shoulder; she, too, remains in constant pain.

Defendant Schneider National Carriers, Inc., which owned the truck, and defendant Jimmy Morgan, who was driving the truck (collectively Schneider), no longer dispute that they were 100 percent liable for the accident. When they originally filed this appeal, they were challenging the damage awards to the Sheths and to Onley. While the appeal was pending, however, they settled with the Sheths. Accordingly, the only remaining issues involved Onley's damage award.

Specifically, Schneider contended that the jury's award of $1.25 million in noneconomic damages to Onley was excessive. In support of its claim that the damages were excessive, it also argued that "[p]laintiffs' counsel" (referring to counsel for the Sheths, not counsel for Onley) committed misconduct that tended to inflame the passion and prejudice of the jury.

Most of Schneider's misconduct claims are either unfounded or forfeited. The sole instance of misconduct that is both valid and preserved was not prejudicial. In light of the devastating impact that Onley's injuries have had on her life, including constant pain and the inability to participate in work and leisure activities that she used to enjoy, we are not convinced that Onley's noneconomic damages were excessive. It follows that the judgment in favor of Onley should be affirmed.

At the last minute, however, after this court had substantially finished preparing a tentative opinion (see Ct. App., Fourth Dist., Div. Two, Internal Operating Practices & Proc., VIII, Tentative opinions and oral argument), Schneider notified us that it had settled with Onley and asked us to dismiss the appeal. Although we will grant the request for dismissal (see *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 285), in light of the tardiness of the request (see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 5:64) and the ultimately lack of merit of the appeal, we issue this opinion expressing our views on the issues. (*Lara v. Cadag* (1993) 13 Cal.App.4th 1061, 1065-1066.)

I

FACTUAL BACKGROUND

On March 26, 2010, around 4:40 a.m., Gamanial Shah was driving a car in the far right lane on the I-10 Freeway near Beaumont. The Sheths were passengers in Shah's car; they were relatives of Shah who were staying with him during a trip from their home in Mumbai, India.

As Schneider's tractor-trailer truck tried to pass Shah's car, it drifted to the right and side-swiped the car. Shah's car spun to the left, crossed in front of the truck, and hit the center divider. A minivan in the fast lane, driven by Onley, then hit Shah's car.

II

PROCEDURAL BACKGROUND

The Sheths filed a complaint against Schneider, Shah, and Onley. Onley cross-complained against Schneider and Shah. The Sheths dismissed Onley with prejudice before trial. Thus, in effect, there were three plaintiffs (the Sheths and Onley) and three defendants (Schneider — including Morgan — and Shah); the trial court so instructed the jury.

A jury found Schneider liable for the accident; it found Shah not liable. It awarded $3,005,478.56 to Mr. Sheth, $33,476,824.00 to Mrs. Sheth, and $1,363,579.70 to Onley. The trial court entered judgment accordingly.

Schneider filed a motion for new trial. It argued, among other things, that: (1) counsel for the Sheths had committed misconduct in closing argument by asking jurors to imagine themselves in Mrs. Sheth's place; (2) counsel for the Sheths had committed misconduct by asking the jury to punish Schneider for the conduct of its counsel; and (3) the damage awards to the Sheths and to Onley were excessive. The trial court denied the motion.

# III

## EXCESSIVE NONECONOMIC DAMAGES

Schneider contends that the damage awards were "grossly excessive." Because Schneider has settled with the Sheths, we consider this contention solely with respect to Onley.

A.     *Additional Factual Background*.

In March 2010, when the accident occurred, Onley was 61 years old. She worked for the Los Angeles Superior Court as a jury coordinator. She loved her job; she was planning to keep working until she was approximately 70, so she could support her two adult daughters while they went to school.

Immediately after the accident, Onley felt a burning pain in her right back. She was taken to a hospital, x-rayed, and released after a couple of hours.

She continued to have pain in her neck, upper right back, and lower back, so she went to a chiropractor for two or three months. Some of her symptoms improved, but her right shoulder got worse.

After about a month, Onley tried going back to work. Although she was left-handed, it was too difficult to do everything with her left hand; the effort made her left arm hurt, too. She went back off work.

In May 2010, an MRI revealed a loose piece of cartilage in Onley's shoulder joint. In July 2010, she had surgery to remove the cartilage. During the surgery, she was found

to have moderately severe arthritis in the shoulder, as well as a stiff or frozen shoulder (adhesive capsulitis).  After the surgery, she went to physical therapy for five months.

Despite the surgery and the physical therapy, Onley still had pain, stiffness, and functional impairment of her right shoulder.  She was not supposed to lift anything heavier than five pounds.  She was permanently incapacitated from doing her job, so she retired.

At the time of trial, Onley still had pain in her right shoulder "24/7."  She rated the pain a three out of ten; if she had to lift or push something, it went up to a four.

She was sleep-deprived.  She could not sleep on her right side at all.  If she slept on her left side, she had to support her right shoulder with her left hand; if the shoulder fell forward, the pain would wake her up.

From time to time, Onley suffered from inflammation in her right knee.  While there was no evidence that this was due to the accident, her shoulder injury prevented her from using a cane to help her walk when her knee was acting up.  The two conditions made each other worse:  "I don't know if the lower back is ping-ponging with my right knee, or if the right knee is ping-ponging with the back, but something is happening between the two of . . . them."

By the time of trial, Onley could not do housework, and she needed help with cooking.  She could not blow dry or comb out her own hair.  She could not get into or out of a bathtub by herself.  She could not push a shopping cart with more than six or seven items in it.  She could not walk her dog.  She used to enjoy bowling, swimming, and ping

pong, but she had had to give them up. Her daughters helped out around the house. However, in two or three years, after they graduated, they would probably move out.

B.    *Additional Procedural Background*.

The jury awarded Onley a total of $1,363,579.70, calculated as follows:

| | |
|---|---|
| Past medical expenses: | $22,007.00 |
| Past loss of earnings: | $91,572.70 |
| Past noneconomic loss: | $250,000.00 |
| Future noneconomic loss: | $1,000,000.00 |

Schneider challenges only the total of $1.25 million in noneconomic damages. It argues that this was "more than 10 times [Onley's] economic damages . . . ."[1]

C.    *Analysis*.

"We review the jury's award under the substantial evidence standard and defer to the trial court's denial of a new trial motion based on excessive damages because of the trial judge's greater familiarity with the case. The amount awarded is peculiarly within the jury's discretion. [Citation.] . . . We usually defer to the jury's discretion unless the record shows inflammatory evidence, misleading instructions, or improper argument by counsel that would suggest the jury relied on improper considerations. [Citation.] We will interfere only when the award is so disproportionate to the injuries suffered that it shocks the conscience and virtually compels the conclusion the award was based on

---

[1]    Actually, it was almost exactly 11 times her economic damages.

7

passion or prejudice. [Citation.]" (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720-721.)

"There are no fixed or absolute standards by which an appellate court can measure in monetary terms the extent of the damages suffered by a plaintiff as a result of the wrongful act of the defendant. The duty of an appellate court is to uphold the jury and trial judge whenever possible. [Citation.] The amount to be awarded is 'a matter on which there legitimately may be a wide difference of opinion' [citation]. In considering the contention that the damages are excessive the appellate court must determine every conflict in the evidence in respondent's favor, and must give h[er] the benefit of every inference reasonably to be drawn from the record [citation]." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508.)

Preliminarily, Onley argues that Schneider has forfeited this contention by failing to set forth all of the evidence relevant to her noneconomic damages. To the extent that Schneider is raising a purely legal argument — i.e., that a ratio of noneconomic damages to economic damages of 11-to-1 is excessive *as a matter of law* — the evidence is irrelevant. Accordingly, this particular argument is not forfeited. However, it lacks merit. "[W]e are loath to usurp this core function of the jury by relying on mathematical formulas to assess the amount of damages that may be awarded, simply because noneconomic damages are not readily quantifiable." (*Buell-Wilson v. Ford Motor Co.* (2006) 141 Cal.App.4th 525, 557.) While we may consider the ratio of noneconomic damages to economic damages, the verdict may stand as long as "there is a reasonable

relationship between the two." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1216.) And to tell if the relationship is reasonable, we must look at the evidence.

Schneider argues that the 11-to-1 ratio is in excess of "the largest ratio upheld in a published case involving motor-vehicle injuries . . . ."[2] However, "a verdict may not be held to be excessive as a matter of law simply because it exceeds the amount awarded in other cases. Courts of [a]ppeal must make their decisions based on the evidence in the case being reviewed." (*Buell-Wilson v. Ford Motor Co.*, *supra*, 141 Cal.App.4th at p. 551.) "[W]hile it is appropriate to look at awards in similar cases, ultimately we must determine the propriety of the award based upon the facts of this case." (*Id*. at p. 550.) In any event, we note that, at least in a slip-and-fall personal injury case, a ratio of noneconomic damages to economic damages of 18.75-to-1 has been upheld. (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078-1080.)

---

[2] There is some sleight of hand in Schneider's argument.

First, Schneider reviews only motor vehicle injuries, even though noneconomic damages would seem more closely related to the *nature* of the injury than to the *cause* of the injury.

Second, it cites cases in which the appellant was not even claiming that the noneconomic damages were excessive. (E.g., *Landeros v. Torres* (2012) 206 Cal.App.4th 398.) These cases "are of only small assistance" in deciding whether higher ratios would have been permissible. (*Buell-Wilson v. Ford Motor Co.*, *supra*, 141 Cal.App.4th at p. 551.)

Third, if Schneider is citing these cases, not as legal authority, but simply "as a point of reference, to provide context to the award by establishing a range of values for similar injuries" (*Buell-Wilson v. Ford Motor Co.*, *supra*, 141 Cal.App.4th at p. 551), it should round up unpublished cases as well as published cases. (*Id*. at pp. 551-552.)

9

Schneider also points out that the jury awarded $1 million in future noneconomic damages, even though, in closing argument, Onley's counsel said that a "fair" amount of future noneconomic damages would be $750,000. Onley's counsel added, however, "[Y]ou may think it's too much, *you may think it's not enough . . . .*" (Italics added.) Thus, he was not conceding that an award of more than $750,000 would be excessive. In any event, the mere fact that the jury awarded more than a plaintiff's attorney requested in closing argument does not show passion and prejudice. (*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett* (1999) 74 Cal.App.4th 1211, 1230-1231.)

To the extent that Schneider is arguing that the noneconomic damages were excessive in light of the evidence, we agree with Onley — Schneider has forfeited this contention. It wholly failed to set forth any of the evidence regarding the impact that Onley's injury has had on her life and well-being. "An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error. [Citation.] An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there *was* substantial evidence in the record to support a *contrary* finding does not compel the conclusion that there *was no* substantial evidence to support the *judgment*. An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to

10

support the judgment. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408, italics added.)

We do not mean to suggest that, if not forfeited, this contention would have merit. There was extensive evidence that Onley's injury was devastating and life-altering. She was in pain "24/7." She suffered from sleep deprivation. Formerly "a little worker bee," she had been forced to give up the job that she loved. Moreover, she had also had to give up her favorite leisure pursuits. She could not bathe, groom herself, or shop without help. She had to look forward with fear and uncertainty to the day when her daughters moved out. Her injury, when combined with her knee problem, made it difficult to walk. She could not even walk her dog.[3]

Given these facts, the ratio of noneconomic to economic damages becomes even less significant. Presumably because Onley had been able to retire, she was not seeking future lost earnings. And presumably because her condition was untreatable, she was not seeking future medical expenses. These facts, however, indicate that her recoverable economic damages were not a fair measure of the actual impact that the accident had on her life. That impact came largely in the form of noneconomic (yet very real) damages. Thus, one would expect the ratio of noneconomic to economic damages to be on the high side.

---

[3] Onley seems to have been a very appealing witness. In opening statement, counsel for Schneider conceded, "One lady who I think you'll really enjoy in this case is Ms. Onley, Betty Jean Onley. Ms. Onley is a delightful lady."

For these reasons, the noneconomic damages were not excessive as a matter of law. Moreover, we accept the trial court's conclusion that they were not excessive in light of the evidence of the effect that the accident had on Onley's life.

IV

ATTORNEY MISCONDUCT

Schneider contends that counsel for the Sheths committed misconduct. It raises this contention in the form of subheadings, under its overall argument that the damages were excessive. Thus, it does not appear to be raising it as separate grounds for reversal. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must state each point under a separate heading or subheading summarizing the point].)

The asserted misconduct falls into two categories, which we discuss separately.

A.      *Disparagement of Schneider's Counsel.*

Schneider contends that counsel for the Sheths disparaged Schneider's counsel.

1.      *Additional factual and procedural background.*

Schneider's misconduct claim has to be viewed against the background of misconduct by Schneider's own attorneys.[4]

Counsel for Schneider committed misconduct in opening statement, by violating in limine rulings, vouching for a witness, and using exhibits that had not been shown to opposing counsel. The trial court's first inclination was to strike his opening statement.

---

[4]      In fairness to Schneider's appellate counsel, we note that Schneider was represented during trial by different attorneys, from a different firm.

12

After further consideration, however, it instructed the jury, specifying the improper references, directing it to disregard them, and noting that counsel for Schneider had "acted improperly and . . . unethical[ly] . . . ."[5]

Nevertheless, counsel for Schneider continued to commit misconduct while questioning witnesses. In particular, he violated in limine rulings, asked questions that lacked a good faith factual basis, and added gratuitous and sometimes argumentative comments to his questions.

Several times, counsel for the Sheths not only objected to an improper question by counsel for Schneider, but added a request that counsel for Schneider be admonished. In some instances, the trial court did admonish counsel for Schneider. In others, it sustained the objection, but did not admonish him.

Toward the end of the trial, the Sheths filed a request for a special jury instruction regarding the "improper and unethical conduct" of counsel for Schneider. Onley joined in the request. The trial court granted the request. Accordingly, it instructed the jury:

"[T]hroughout the trial, plaintiffs' counsel and counsel for defendant Shah have objected and asked to approach the bench for sidebar conferences a number of times. The Court has found that many of these sidebars were necessary in order to prevent [counsel for Schneider] from violating orders [in] this case.

---

[5]       Schneider does not claim that this instruction was erroneous.

13

"[Counsel for Schneider] has been admonished several times and admonished again for his improper conduct and for attempting to violate a Court order.  You are instructed not to hold the sidebar conferences against counsel who requested these conferences in an effort to prevent [counsel for Schneider]'s improper conduct.  You're also not to speculate which orders of the Court [counsel for Schneider] may have violated or attempted to violate."[6]

In closing argument, counsel for the Sheths stated:  "Throughout the trial, plaintiffs' counsel and counsel for defendant Shah have objected and asked to approach the bench . . .  The Court has found that many of these sidebars were necessary in order to prevent [counsel for Schneider] from violating orders of the Court.  [¶]  [Counsel for Schneider] has been admonished several times and is admonished again for his improper conduct and for attempting to violate this Court's orders.  You were requested not to hold it against us for doing that.  And [w]e requested sidebars in order to prevent [counsel for Schneider]'s improper conduct."

Counsel for the Sheths also discussed some of the instances in which counsel for Schneider had asked questions that lacked a good faith basis.  He noted that the questions were "improper and unethical" and that the trial court had admonished counsel for Schneider for asking them.  He asked the jury to "disregard" those questions.

---

**6** Once again, Schneider does not claim that this instruction was erroneous.  In fact, it states:  ". . . Defendants do not contest that the trial court had discretion to issue [this] admonition."  (Italics omitted.)

14

2. *Analysis*.

For Schneider to accuse the Sheths' counsel of doing something wrong is a breathtaking feat of chutzpah. As the foregoing facts show, it was actually Schneider's own counsel who committed misconduct. Significantly, in this appeal, *Schneider never argues otherwise*. Nevertheless, Schneider faults counsel for the Sheths for objecting and requesting admonitions. It also faults counsel for the Sheths for trying to counter the misconduct in closing argument. And — most chutzpadik of all — it asks us to reverse the judgment in favor of *Onley*, even though she had nothing to do with the charges and countercharges of misconduct (other than joining in the request for a special instruction, which Schneider does not fault).

Clearly, counsel for the Sheths did nothing wrong by objecting and requesting admonitions. That was the only way they could halt the misconduct. If they failed to object, or if they did object but failed to request an admonition, they risked forfeiting the misconduct as a future issue on appeal. (See *Rayii v. Gatica*, *supra*, 218 Cal.App.4th at pp. 1411-1412.)

Counsel for the Sheths also did nothing wrong by citing the trial court's admonitions in closing argument. Schneider argues that the argument effectively asked the jury to punish the client for the attorney's misdeeds. But not so. Counsel for the Sheths was understandably concerned that the jurors would hold the many objections and sidebars against them and their clients. Hence, they quite properly cited the trial court's instruction that these sidebars had been necessitated by the misconduct of counsel for

15

Schneider. They were also concerned that counsel for Schneider had been able to plant ideas in the jurors' minds by asking questions that lacked a factual foundation. Thus, once again, they properly noted that the trial court had admonished counsel for Schneider for asking such questions; they simply asked the jury to disregard them. They did not say or even hint that the jury should punish Schneider.

Finally, Schneider brings up an incident in which counsel for the Sheths called counsel for Schneider "unethical" and a "crook." Schneider asserts that these remarks were made "in front of, and within the hearing of, the jury." But that is not true. The remarks were made in a downstairs hallway. Counsel for Schneider complained about the risk that they could have been overheard by a juror; however, no juror was actually present. The trial court reminded counsel for the Sheths to keep his voice down and to avoid talking about the case where jurors could possibly hear him. Counsel for Schneider did not ask the trial court to take any other action, and Schneider does not argue that the action that the court did take was inadequate.

We therefore conclude that counsel for the Sheths properly asked the trial court to admonish counsel for Schneider. We further conclude that counsel for the Sheths properly invoked the trial court's admonitions in closing argument. Schneider has not shown any reason to suppose that the conduct of counsel for the Sheths led the jury to award excessive damages to the Sheths — much less to Onley. Moreover, even though Schneider is not arguing that the conduct of counsel for the Sheths constituted reversible error, we conclude that it did not.

16

B.    *Improper "Golden Rule" Arguments in Closing.*

Schneider contends that, in closing argument, counsel for the Sheths improperly asked the jurors to award damages based on what they would charge to undergo the same pain and suffering.

1.    *Additional factual and procedural background.*

In closing argument, counsel for the Sheths stated:

a. "And pain, you go to the dentist, do you ask for that Novocaine shot, or do you say, 'I'll take the pain'?  You pay to relieve the pain."

b. "Is it worth it to survive, to go through life, to have to take 16 or 30 pills a day, to have to be catheterized, to have to go through surgeries, to get urinary tract infections?  Is that worth it?  Is it worth it to survive?  *We have all been to at [sic] the hospital, smelled the smell of death in the hospital.*  Is it worth it?"  (Italics added.)

c. "Imagine laying in bed in a foreign country with no movement in any or your arms and limbs.  You think that caused her some anxiety?  Do you think that caused her some mental suffering?"

d. "This is multiple times a day.  She has the catheter placed in.  *But you can imagine what it's like for her.*  Then it has to be emptied.  It's not like she's going to the restroom . . . .  [¶]  . . . *Imagine doing that each and every day for the rest of your life.*"  (Italics added.)

e. "You know, if you were to put an ad in the newspaper here in Riverside, in the Enterprise, and you were to say, looking for a 58-year-old woman to come to America

17

. . . [¶] . . . [¶] And you were to say that this person is going to have to be paralyzed and run off the road and not be able to use their bowel and bladder, and not be able to interact with their family, go through all this, and based on that evidence, how much money do you think it would be for some other person to answer that ad based on the evidence?  Do you think people would just be lining up for $16 million based on the evidence that we have in this case?  I don't think so.  I don't think there would be anybody in line."

Counsel for Schneider did not object to the first four of these remarks.  However, he did object to the fifth and last remark, regarding the newspaper ad, stating, "That's absolutely improper to make that analogy.  Golden Rule."  The trial court overruled the objection.

2.    *Analysis*.

Counsel for Schneider forfeited any objection to the first four challenged remarks by failing to object below.  (*Rayii v. Gatica*, *supra*, 218 Cal.App.4th at pp. 1411-1412.)  Failure to object forfeits a claim of improper argument, not only as a basis for reversal, but also as a basis for asserting that an award of damages was excessive.  (*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*, *supra*, 74 Cal.App.4th at p. 1230.)

Schneider claims that it was not required to object to every instance of misconduct in order to preserve the issue for appeal; it cites *Love v. Wolf* (1964) 226 Cal.App.2d 378.  In *Love*, however, the appellant's counsel did object to "many instances of misconduct," but the trial court "fail[ed] to rule on the objections made."  (*Id*. at p. 392.)  "Moreover, in

18

a number of the instances . . . the judge . . . did not admonish the jury when requested to do so." (*Ibid*.)  Thus, *Love* falls within the general rule that a failure to object will be excused when it is clear from the record that an objection would have been futile.  (See, e.g., *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726-728.)

This is not such a case.  Here, four of the five challenged remarks went by without any objection.  While the trial court did overrule the objection to the fifth remark, we cannot say that it would have overruled objections to the others.  (See, e.g., *Duronslet v. Kamps*, *supra*, 203 Cal.App.4th at pp. 725-726, 728 [failure to object to party's declaration as hearsay was not excused, even though trial court did not sustain subsequent similar hearsay objection to attorney's declaration].)  For example, prompt and repeated objections might have helped to show a pattern.  Accordingly, we consider only the fifth challenged remark, regarding the hypothetical newspaper ad.

"In conducting closing argument, attorneys for both sides have wide latitude to discuss the case." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795.)  One type of argument that is misconduct, however, is "the so-called golden rule argument, in which counsel asks jurors to put themselves in the plaintiff's shoes and ask what compensation they would personally expect." (*Id*. at p. 797.)  "'The jury must impartially determine pain and suffering damages based upon evidence specific to the plaintiff, as opposed to statistical data concerning the public at large.  The only person whose pain and suffering is relevant in calculating a general damage award is the plaintiff.  How others would feel if placed in the plaintiff's position is irrelevant. . . .' [Citation.]" (*Id*. at p. 797, fn. 4.)

19

*Collins v. Union Pacific Railroad Co.* (2012) 207 Cal.App.4th 867 [Fourth Dist., Div. Two] involved a newspaper ad argument much like the one here. There, the trial court had *granted* a new trial based on excessive damages. (*Id.* at p. 882.) We held that this was not an abuse of discretion, for three reasons. (*Id.* at pp. 882-883.) First, as the trial court found, the plaintiff's expert was not credible. (*Id.* at pp. 883-884.) Second, the plaintiff's counsel asked the jury to use its verdict to "send a message." (*Id.* at p. 883.) Third, the plaintiff's "[c]ounsel argued that the jury should consider its decision by imagining an ad in the newspaper seeking a surrogate victim, someone who would come in to have the same type of injury as the plaintiff; counsel asked the jury to consider what fee would compensate for that injury." (*Id.* at p. 883.) We concluded that this was a golden rule argument. (*Ibid.*)

Under *Collins,* counsel for the Sheths' newspaper ad argument in this case constituted misconduct, and the trial court erred by overruling the objection to it. However, this does not mean that the trial court erred by denying the new trial motion. *Collins* held that the trial court had *discretion* to grant a new trial motion, not that it was *required* to grant one. As mentioned earlier, we defer to the trial court's denial of a new trial motion based on excessive damages because of the trial judge's greater familiarity with the case. Moreover, in *Collins*, there were several other reasons, besides the newspaper ad argument, for concluding that the damages were excessive.

Here, there were sound reasons for the trial court to conclude that the newspaper ad argument, even if misconduct, was not prejudicial. The newspaper ad argument, in the

20

context of an 80-page closing, was "fleeting." (See *Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at pp. 803-804.) The particular newspaper ad argument in this case was not nearly as problematic as the typical golden rule argument, because it did focus the jury on evidence specific to Mrs. Sheth — her age, her situation as a foreign visitor, and her particular injuries. Moreover, the jury was instructed twice, at both the beginning and the end of the trial, not to "let bias, sympathy, prejudice, or public opinion influence your decisions." "We presume that the jury followed the instructions it was given [citation] . . . ." (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 364.)

Finally — and, for purposes of this appeal, most significantly — it was *the Sheths'* counsel who asked the jurors to put themselves in the place of *Mrs. Sheth*; there is no reason to suppose that this affected the verdict in favor of *Onley*. Indeed, as Onley points out, Schneider, in its opening brief, never even tries to explain how the golden rule argument was prejudicial vis à vis Onley. "The failure to provide an explicit prejudice analysis . . . results in a waiver. [Citations.]" (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 52.) Even aside from forfeiture, we discern no prejudice. The notion that the newspaper ad argument somehow spilled over and tainted the jury's consideration of Onley's damages is purely speculative. It is just as likely that, by asking the jurors to identify with Mrs. Sheth, who had suffered the most dramatic injuries, the argument would tend to make them *discount* Onley's injuries.

21

In sum, then, the only attorney misconduct that has been preserved for purposes of appeal is the newspaper ad argument made by counsel for the Sheths. The trial court could reasonably conclude that this argument had no effect on the jury's award of damages to Onley, and that, even in light of this argument, the award of damages to Onley was not excessive.

V

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

22