*1375
 
 Opinion
 

 GAUT, J.—
 

 1.
 
 Introduction
 

 Following the dissolution of his 37-year marriage to Polly Reynolds (Wife), A. Gordon Reynolds, M.D. (Husband), appeals from an order granting his motion to reduce or terminate spousal support. The motion was based on the premise that Husband’s termination from employment and his subsequent decision to retire at age 67 constituted a change in circumstances justifying either reduction or termination of support.
 

 Although the superior court made an order reducing the amount of monthly spousal support from $5,500 to $3,500, Husband contends that the record does not support the court’s findings that Husband has a monthly income of $5,000. Additionally, Husband argues that the trial court’s order would improperly require him to liquidate or invade his retirement assets in order to pay support.
 

 As we explain below, we agree that the superior court abused its discretion in making a spousal support order of $3,500. We reverse and remand for further proceedings consistent with this opinion.
 

 2.
 
 Facts
 

 Husband and Wife were married in 1948. They legally separated in 1985. According to the marriage settlement agreement, which was part of the final judgment entered on January 26, 1989, the parties split community assets worth $860,000 and Husband agreed to pay monthly spousal support of $5,500 per month to Wife for three years, commencing November 1, 1988, and modifiable after three years on court order. At that time, Husband, an obstetrician and gynecologist, was employed as the health and fitness director at La Costa Health Spa. His combined annual income, including a salary of $140,000 and consulting fees of $12,000, was $204,000, or $17,000 a month.
 

 In August 1992, when he was 66 years old, Husband underwent leg surgery and was fired from La Costa Health Spa. He then filed a motion seeking to terminate spousal support to Wife. On January 29, 1993, the court denied Husband’s motion, apparently because it was based on outdated financial information.
 

 Subsequently, Husband filed a reconsideration motion on June 1, 1993, submitting a new income and expense declaration listing his net monthly
 
 *1376
 
 income as $347.92. In opposition, on December 1, 1993, Wife filed a declaration describing the various physical and mental disabilities from which she suffers and listing her net monthly income as $1,234. Wife also argued that Husband had understated his income and she submitted a copy of a newspaper article which reported that Husband had recently opened a medical clinic in Redlands. On December 8, 1993, Husband submitted a supplemental declaration in which he stated that his Redlands practice had been unsuccessful and that he had closed the office. He also described his fruitless efforts to obtain other employment. He concluded by stating that, at age 67, he had realized “it is finally time to retire.” He submitted a third income and expense declaration in which he reported that his current net monthly income was $2,871, excluding any investment income, but that, as of January 1, 1994, his monthly net income would be $3,486, including investment income of $1,900. On December 8, 1993, the court took the reconsideration motion under submission and then ordered it resubmitted as of March 7, 1994.
 

 On March 23, 1994, Wife filed a motion for the submission of additional evidence regarding whether or not Husband continued to be employed. No such evidence is included in the record. On April 4, 1994, Husband filed another declaration stating that “I am retired and have been retired since December 1, 1993.” He also submitted his 1993 income tax return showing a total annual pretax gross income of $60,645.
 

 On May 13, 1994, the court modified its previous order and ordered monthly spousal support reduced to $3,500. Husband then objected to the order and the court set the matter for further hearing.
 

 On December 9,1994, Wife filed a motion for fees and costs, to determine arrearages, and addressing other related matters. In a supporting declaration, Wife reported that Husband had paid her only $2,000 a month from July 1993 through February 1995. She described the dire state of her health. She asserted that Husband had $600,000 in IRA’s (individual retirement accounts) that could be withdrawn without penalty. She submitted copies of newspaper advertising which suggested that in May and June of 1994, Husband was involved with four weight-loss clinics operating in San Diego County. Although Husband’s opposition to this motion has not been made part of the record on appeal, in Wife’s reply, she observed that he had denied making any money from the clinics.
 

 On March 7, 1995, the court issued its ruling on the various motions, making 18 specific findings. Among the pertinent findings are that Husband had a current monthly income of $5,000, based upon “his investment income
 
 *1377
 
 and his ability to work.” The court also found that, although Husband had no earnings between January 1993 and April 1994, he had retirement assets worth $457,506. The court clarified that its order was to be effective as of June 1, 1993.
 

 Husband filed a timely notice of appeal.
 

 3.
 
 Discussion
 

 The trial court exercises broad discretion in deciding whether to reduce or terminate a spousal support order. Its order must be based on (1) a material change in facts or circumstances existing at the time the order is made and (2) a consideration of the needs of both parties and their respective abilities to meet their needs.
 
 (In re Marriage of Sinks
 
 (1988) 204 CaI.App.3d 586, 591-592 [251 Cal.Rptr. 379];
 
 In re Marriage of Stephenson
 
 (1995) 39 Cal.App.4th 71, 76-77 [46 Cal.Rptr.2d 8]; Fam. Code, § 4320, formerly Civ. Code, § 4801.) An appealing party must demonstrate the existence of a material change in facts or circumstances and that as a matter of law an abuse of discretion has occurred: “An abuse of discretion occurs when, after calm and careful reflection upon the entire matter, it can fairly be said that no judge would reasonably make the same order under the same circumstances. [Citation.]”
 
 (In re Marriage of Sinks, supra,
 
 204 Cal.App.3d at p. 591.) In applying the foregoing principles, we must decide whether the trial court abused its discretion.
 

 As reflected in its rulings and findings, the trial court duly considered the needs and abilities of the parties. The court was persuaded that Husband had shown a material change in facts and circumstances which justified some reduction in the amount of spousal support. The question before us is whether the court’s findings as to the amount of the reduction are supported by the sufficiency of the evidence.
 
 (In re Marriage of Meegan
 
 (1992) 11 Cal.App.4th 156, 161 [13 Cal.Rptr.2d 799].) Thus we arrive at the key issue on appeal: If Husband had indeed retired from active employment, could the trial court properly attribute to him a monthly income based on his ability to earn rather than his actual earnings, thus requiring him to work well past the “generally accepted retirement age of 65”?
 
 [1]
 

 (In re Marriage of Sinks, supra,
 
 204 Cal.App.3d at p. 595 (dis. opn. of Work, J.).) We hold it cannot.
 

 The analysis of this case is complicated by the extended nature of the proceedings below. Husband’s initial motion for reduction or termination of
 
 *1378
 
 spousal support was filed in October 1992. The court’s findings were not issued until March 1995. In between these dates, Husband’s financial situation fluctuated. According to his 1993 tax return, Husband’s joint annual gross income with his new wife, Jonelle, was $60,645, or $5,054 monthly. But that figure included income from Jonelle’s separate investments, which could not be considered (Fam. Code, § 4323, subd. (b)), as well as unemployment benefits of $17,710, which Husband would not receive in 1994.
 

 According to his income and expense declaration filed in December 1993, Husband’s monthly income in 1993 was $2,871, excluding any investment income. There is also evidence in the record that the rate of return on Husband’s investments yielded between $1,900 and $2,333 per month. Using those figures and the lowest tax bracket of 15 percent, his net monthly income in 1993 was between $4,055 and $4,423. The record also supports that Husband subsequently had a net monthly income of $3,486, including investment income of $1,900, in 1994.
 

 Based on the foregoing, we make three observations. First, no evidence in the record supports the trial court’s finding of a monthly income for Husband of $5,000. For purposes of calculating spousal support, the court used the net monthly income figure of $1,234, as reported in Wife’s declaration. Husband’s comparable net monthly income was between $4,055 and $4,423 in 1993 and $3,486 in 1994. Although the joint gross monthly income of Husband and Jonelle was approximately $5,000, the record contradicts the trial court’s finding that Husband’s net monthly income was $5,000.
 

 Second, even if the trial court calculated Husband’s income in part based on his ability to earn rather than his actual income, Wife submitted no evidence to the court of Husband’s potential earning capacity. The “capacity to earn standard” may only be applied where there is evidence of the ability, opportunity, and willingness to work.
 
 (In re Marriage of Hinman
 
 (1997) 55 Cal.App.4th 988, 995 [64 Cal.Rptr.2d 383], citing
 
 In re Marriage of Regnery
 
 (1989) 214 Cal.App.3d 1367, 1372 [263 Cal.Rptr. 243].) Husband was apparently willing to work, hence his brief operation of the Redlands clinic and his involvement with the weight-loss programs. But apparently he made little or no money from those enterprises. Nor did Wife show that they constituted legitimate earning opportunities. There is no evidence that Husband had any actual ability to work or that he refused any real jobs.
 

 Furthermore, we hold that no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed. Though previous case law has not squarely confronted this issue, we face it now.
 

 
 *1379
 
 The courts have held that a supporting spouse cannot deliberately shirk support obligations by refusing to work.
 
 (Philbin
 
 v.
 
 Philbin
 
 (1971) 19 Cal.App.3d 115, 119-121 [96 Cal.Rptr. 408].) In applying that rule, this court has concluded that a 39-year-old pharmacist cannot obtain a reduction in child and spousal support because he has decided to quit his job and attend medical school, even if he is acting in good faith.
 
 (In re Marriage of Ilas
 
 (1993) 12 Cal.App.4th 1630, 1637-1639 [16 Cal.Rptr.2d 345].) In contrast, Division Three of this court has held that a man in his mid-50’s could stop paying spousal support when he left his job as a sales executive in order to enter a monastery.
 
 (In re Marriage of Meegan, supra,
 
 11 Cal.App.4th at pp. 162-163.)
 

 The courts have also held that a supporting spouse cannot retire prematurely in order to avoid paying spousal support.
 
 (In re Marriage of Sinks, supra,
 
 204 Cal.App.3d at pp. 592-593;
 
 In re Marriage of Stephenson, supra,
 
 39 Cal.App.4th at pp. 78-81.) But the same cases have recognized that, in the instance of a bona fide retirement, a supporting spouse should not be forced to continue working. Under those circumstances, the trial court may determine that there has been a material change in circumstances to justify a modification of support. (See
 
 In re Marriage of Sinks, supra,
 
 204 Cal.App.3d at pp. 594-595 and
 
 In re Marriage of Stephenson, supra,
 
 39 Cal.App.4th at pp. 80-81, fn. 4.) Just as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires.
 

 In the present case, the court did not base the spousal support order on an examination of the material change in circumstances caused by Husband’s timely retirement. Instead, the court refused to recognize the effect of Husband’s retirement and incorrectly applied a “capacity to earn” standard. Therefore, the court abused its discretion.
 

 Finally, we confess that we do not fully understand the court’s 17th finding in which it states that it relied 100 percent upon Husband’s retirement assets of $457,506 in making its order for spousal support of $3,500 a month. That finding suggests that the court assumed Husband would receive a 9 percent annual rate of return on his retirement funds, and then awarded the entire amount of his investment income to Wife.
 
 [2]
 
 But the uncontroverted evidence was that Husband’s investments yielded, at their highest rate of return, an annual income of approximately $28,000 (a 6 percent rate of return) or $2,333 monthly. If the court relied entirely upon Husband’s retirement assets in making the spousal support order, then the spousal support order substantially exceeded the amount of the greatest possible return on Husband’s investments.
 

 
 *1380
 
 Because the amount of the spousal support order exceeded Husband’s net income from any source, we agree that if Husband complied with the court’s order, he would improperly be required to invade or exhaust his retirement assets in order to pay Wife. Only investment income, not investment principal, should be available to pay spousal support
 
 (In re Marriage of Olson
 
 (1993) 14 Cal.App.4th 1, 10 [17 Cal.Rptr.2d 480]), especially in this case where the subject retirement assets represent Husband’s residual share of the community property awarded to him as part of the dissolution.
 

 4.
 
 Disposition
 

 For all of the foregoing reasons, we hold that the trial court abused its discretion in making a spousal support order of $3,500. We reverse and remand to the trial court for further proceedings in accordance with our opinion. Each party to bear its own costs.
 

 Ramirez, P. J., and McKinster, J., concurred.
 

 A petition for a rehearing was denied May 29, 1998.
 

 [1]
 

 Husband, who was bom on January 25, 1926, was 66 when he was fired by La Costa Health Spa, 67 when he decided he had to retire, 68 when the trial court made its modified order, and 69 when the trial court issued its ruling in support of the order. By the time this appeal is heard for oral argument, he will be 72. Polly, who was bom on October 13, 1925, will also be 72.
 

 [2]
 

 $3,500 a month represents an annual 9 percent rate of return on $457,506.