Filed 11/30/20  In re Marriage of Kindschi CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| In re Marriage of JOYCE M. and RONALD O. KINDSCHI. | |
| JOYCE M. KINDSCHI,<br><br>    Respondent,<br><br>        v.<br><br>RONALD O. KINDSCHI,<br><br>    Appellant. | G057267<br><br>(Super. Ct. No. 14D001905)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.  Request for Judicial Notice.  Granted.  Motion to Augment.  Granted.

Merritt McKeon for Appellant.

Law Offices of Margorie G. Fuller and Marjorie G. Fuller; Law Offices of Rosen & Rosen and Bonnie Zeldin Rosen for Respondent.

\*        \*        \*

Ronald Kindschi (Ronald)[1] appeals from trial court orders in the dissolution of his 39-year marriage to Joyce Kindschi (Joyce). Ronald challenges the court's spousal support award and its denial of Ronald's requests for attorney fees to be paid from the partial release of uncharacterized funds held in trust pending final judgment. Ronald also contests the court's finding at trial that those trust funds were Joyce's separate property. Ronald further faults the court for failing to assist him in the pro per presentation of his case and for failing to refer him to the self-help department of the family court. None of Ronald's arguments has merit. Accordingly, we affirm.

I

BACKGROUND

Joyce and Ronald were married in June 1975 and separated in March 2014 with no minor children. At separation, Joyce was 63 years old and a retired schoolteacher; Ronald was 68 years old and a self-employed, certified financial advisor. We summarize here the facts relevant to the main issues on appeal.[2]

A. *Characterizing the Proceeds from the Sale of the Marital Residence*

The couple had purchased the marital residence jointly as community property. At some point during the marriage, Ronald alone declared bankruptcy. Joyce bought the residence out of the bankruptcy estate with a loan she obtained in her name from Ronald's parents, and she held title to the residence as her sole and separate property. Later, she deeded the property to Ronald and herself as community property. After the couple separated, they sold the residence to a third party, generating net proceeds of $1,378,542.

---

[1]     As is customary in marriage cases involving parties with the same surname, we use each party's first name for clarity. We intend no disrespect.
[2]     Ronald filed a motion to augment the record on appeal with a volume of trial exhibits submitted along with the motion. The motion to augment is granted.

2

The characterization of those net proceeds was a key disputed issue in the marital dissolution.  Ronald claimed the proceeds were community property in which he owned a 50 percent interest; Joyce claimed she was entitled to reimbursement of her separate property contribution to the community's acquisition of the property under Family Code section 2640.  The trial court ordered the sale proceeds of $1,378,542 held in trust pending final judgment, with half of the proceeds placed in the trust account of each side's counsel, and no distributions made except by mutual agreement or court order.

B.  *Spousal Support Orders and Ronald's Requests for Attorney Fees*

In early March 2014, Joyce filed a request for pendente lite support and propounded to Ronald interrogatories and a request for documents.  In the ensuing months, Ronald failed to provide any of the requested discovery, leading the court in July 2014 to grant Joyce's motion to compel responses without objection and for sanctions and in February 2015 to impose additional monetary sanctions when Ronald still had not complied with the discovery orders.

In July 2014, the parties stipulated to a pendente lite support order of $2,000 per month for Joyce, with Ronald also paying the mortgage and insurance on the marital residence and $6,000 for Joyce to hire a forensic accountant.  In October 2014, the parties stipulated to a new temporary support payment of $1,500 per week occasioned by the sale of the marital residence, ending Ronald's mortgage payments.

In June 2015, Ronald moved to modify the temporary support order and for an order releasing part of the sale proceeds in the trust account to pay his attorney fees.  Ronald specifically requested "a downward modification in spousal support" and "a pre-distribution" from the trust funds of $50,000 each to him and Joyce.  Under penalty of perjury, Ronald stated:  "I cannot afford to pay $1,500 [per week] as I am only earning $8,815 [per month] gross in Social Security . . . and self-employment income as a financial advisor."

3

Ronald described the extent of his "self-employment income" as follows: "In 2014, I earned gross income each month of $6,317[.] . . . . In 2015, I have not received any pay whatsoever." He said he had "no money" to pay and "rehire" his former attorney, who had withdrawn from the case two months earlier,[3] or to retain new counsel.

Joyce opposed Ronald's request to decrease spousal support and release $50,000 to him from trust funds for attorney fees. She contended "all of the funds must be held until there is a final adjudication" because Ronald "is not trustworthy" and "has not been forthright with me, nor the Court, during this entire process and . . . there will be no way for [] Ron to pay me what he owes . . . ." Joyce accused Ronald of misrepresenting his income; she cited the attached report of her forensic accountant, Dennis Sperry, which concluded Ronald's "income for 2014 was $24,111 per month" and his income for the first seven months of 2015 was $20,290 per month. Joyce asserted, "Ron has the money to pay for his attorney and mine from his cash flow."

In December 2015, the trial court entered a stipulated order to continue the hearing on Ronald's request to modify the support order, with Ronald ordered to provide Joyce's accountant Sperry backup documentation supporting Ronald's contentions about his income. The documents were due by January 29, 2016. The stipulation also provided for a release of $20,000 to each party.

By mid-March 2016, Ronald still had not provided Sperry with the ordered documentation. Before the hearing on Ronald's motion, Joyce filed a motion in limine to prevent Ronald from presenting any evidence—testimony, arguments, or reports—

---

[3] After substituting out of the case, Ronald's attorney David Sandor agreed to "limited scope" representation of Ronald at several hearings through late June 2016, when his firm withdrew from all representation of Ronald. For the next five months Ronald represented himself in propria persona until retaining new counsel, Mark Curtis, in early December 2016.

"regarding his cash flow." The court granted Joyce's motion in limine and ordered Ronald "will be precluded [from] produc[ing] documents not provided to [Joyce]."

Over several partial days, the trial court heard testimony from Sperry, Joyce, and Ronald on the issue of spousal support. Sperry testified about the report he prepared on Ronald's cash flow and the court admitted the report into evidence. At the conclusion of the hearing, the court found Sperry "to be credible and his calculations to be accurate." "Based on the testimony heard and the evidence presented," the court found Ronald's "monthly income to be $24,000.00 per month" and Joyce's income "to be $1,017.00 per month from Social Security." The court ordered Ronald to pay Joyce pendente lite support of $7500 per month "retroactive to 10/1/2015." The court also authorized the release of $10,000 to Ronald for a forensic accountant and the same amount to Joyce for attorney fees. The court "reserve[d] jurisdiction over the issues of attorney's fees and [sanctions] to the time of trial."

By early November 2016, Ronald had "accumulated substantial support arrears" and Joyce was "in a financially desperate position," unable to pay rent or necessary living expenses, with "less than $900 in my checking account." Joyce made an ex parte application to the trial court for an emergency release of $45,000 from trust funds. She asked the court not to make any disbursement of trust funds to Ronald, however, because of the "substantial monies" he owed her "for support arrears of over $115,000" and "his misappropriation" of the community's retirement funds and Joyce's separate property. The court denied Joyce relief pending a hearing.

From this point through commencement of trial in December 2017, the parties each filed requests for the release of trust funds: Joyce asked for funds for living expenses; both parties asked for funds to pay attorney and expert fees. Joyce opposed all of Ronald's requests, arguing the trust funds were entirely her separate property and she would not recover any money advanced to Ronald.

5

Despite Joyce's objection, the trial court released additional trust funds to Ronald for attorney and expert fees in the amounts of $35,000 in December 2016 and $20,000 in April 2017. After the last disbursement of funds to Ronald in April 2017, however, the court declined Ronald's four additional requests for attorney fees. By then, Ronald had received a total of $115,000 from the trust funds for attorney fees.

Here are the four orders denying Ronald's fees requests at issue in this appeal: In July 2017, the trial court denied Ronald's request for $50,000 for attorney fees. In late December 2017, after seven partial days of trial and an order trailing the remainder of trial to August 2018, the court denied an oral request from Ronald's counsel, Mark Curtis, for a release of trust funds for attorney fees. (Soon afterward, Curtis substituted out of the case and Ronald began representing himself.)[4] On August 13, 2018, the first day of trial, Ronald orally asked the court twice to release trust funds for attorney and expert fees, and the court denied both requests. Trial went forward with Ronald representing himself.

C. *Statement of Decision and Judgment*

At the conclusion of the trial, the court granted a judgment of dissolution of the marriage and announced its tentative decision from the bench. Joyce's counsel prepared a proposed statement of decision as ordered by the court and Ronald filed objections to the proposed statement of decision, which the court overruled. On November 26, 2018, the court entered the judgment, incorporating by reference the statement of decision.

---

[4]     On August 10, 2018, on the eve of the continued trial set to begin August 13, Ronald's new "limited scope" attorney, Elizabeth Nigro, filed an ex parte application to continue the trial so Ronald could file "a second motion for release of [trust] funds . . . for the purpose of retaining new counsel for trial and paying his forensic accountant." The trial court denied the ex parte application. Nigro thereafter withdrew from the representation.

Among the detailed findings in the statement of decision are the following relevant to this appeal:

1. Credibility Determinations

The trial court found Ronald "was not credible"; Joyce's testimony was "much more believable and credible than that of [Ronald]" and Joyce "provid[ed] substantial documentary evidence to support her claims." As for the parties' respective expert witnesses, the court compared the "testimony and documentary evidence of the forensic accountants, Dennis Sperry and Andrew Hunt," and "accepts the testimony of Mr. Sperry over Mr. Hunt where they differ." The court explained it credited Sperry's opinion over Hunt's "due, in part, to the unreliability" of the information Hunt relied on and his use of what the court viewed as a disfavored "'projected income'" approach to determining Ronald's income available for support.

2. Ownership of the Sales Proceeds Held in Trust

The court determined the parties originally bought the marital residence jointly as community property; Ronald's individual bankruptcy put the residence in the hands of the bankruptcy trustee who "awarded the [residence to Joyce] as her sole and separate property"; when Joyce later "deeded" the property to Joyce and Ronald jointly "pursuant to a refinance," it had a fair market value of "$2,000,000 with encumbrances totaling $445,052, leaving [Joyce with] a net separate property equity of . . . $1,554,948[.]"

Crucially, the trial court found Joyce's transfer of the residence to the community "triggered Family Code § 2640 [sic]," entitling her to reimbursement for her

7

separate property contribution to the community's acquisition of the property.[5]  Because Joyce's separate property contribution of over $1.5 million exceeded the $1,378,542 net proceeds from the property's sale, the court ruled the balance of the sales proceeds still held in the trust account "shall be released to [Joyce] as the remaining amount is her separate property."  The court charged Ronald with reimbursing Joyce for the $205,000 he received from the sales proceeds, plus additional funds he received, "[f]or a total reimbursement to [Joyce] from [Ronald], related to the [marital residence] in the amount of $482,866."

### 3.  Spousal Support

The trial court found the marital standard of living was upper middle class; the "marriage [is] of long duration, 39 years and 9 months"; Joyce "gave up her teaching career to take care of" Ronald and their children, and to support Ronald's "business activities"; Ronald obtained advanced degrees and licenses during the marriage; and both parties "are in their 70's and are in good health for his/her age.  Both parties are currently employed."  The court found Ronald "has the ability to contribute to the support of [Joyce], earning approximately $9,500/Month [based on the testimony of] both accountants."  The court also "considered the other factors that are just and equitable, including [Joyce's] ability or inability to earn sufficient monies to support herself" and "the loss of her separate property."

The court ordered Ronald to pay spousal support to Joyce "in the amount of $3,900 per month retroactive to January 1, 2017." The court also found Ronald owed Joyce "spousal support arrears . . . in the amount of $195,421."

---

[5]  Family Code section 2640, subdivision (b), provides in pertinent part as follows: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."  (All further statutory references are to the Family Code.)

4. Breach of Fiduciary Duty and Attorney Fees

The trial court found Ronald breached his fiduciary duty to Joyce by, among other things, "not disclosing substantial tax refunds received by him post-separation, which belonged to the community; invading Individual Retirement Accounts without disclosure; fail[ing] to provide documentation regarding [Joyce's] separate and community investments; misrepresenting material facts to induce [Joyce] to provide [him] with her separate property funds; [and] misappropriating [Joyce's] separate property[.]"

The trial court concluded Ronald's breach of fiduciary duties warranted sanctions and, accordingly, ordered Ronald to pay 40 percent of Joyce's attorney fees and expert fees, for a total sanctions award of $77,796. The court explained it based the sanctions order on its "own observations and experience," and on Ronald's many "failures" in the martial dissolution, recounted as follows: "[Ronald's] failure to comply with his fiduciary duties . . . , [Ronald's] failure to comply with discovery and [c]ourt [o]rders unreasonably increasing fees[,] and his ability to pay over the course of litigation and thereafter, [Ronald's] taking legal positions that were unsupportable by law or the evidence, [Ronald's] frustrating the policy of the law to promote settlement of litigation and failure to cooperate when appropriate, thereby increasing the costs of litigation for [Joyce]."

II

DISCUSSION

A. *The Spousal Support Award Was Within the Trial Court's Discretion*

Ronald argues the trial court abused its discretion in awarding Joyce spousal support of $3,900 per month based on the finding Ronald has a monthly income of approximately $9,500. Ronald challenges that finding as unsupported by the evidence, contending at the time of trial he had no income other than $2,602 per month from Social Security. Consequently, he asserts, the court improperly "impute[d] income to a retired

9

person" in determining spousal support, which is an abuse of discretion under *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373 (*Reynolds*).

Though the argument is couched in terms of abuse of discretion, its essence is a challenge to the factual finding Ronald has a monthly income of $9,500. Ronald states: "There is no evidence to support the court imputing any income at all [to] Ronald[.]"

"On appeal, we presume the judgment is correct. . . . '[I]n reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, [we] "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment.' [Citation.]" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 93-94.)

There is an important corollary to the above-cited rule: "An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 (*Rayii*); accord, *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317 [in challenge to sufficiency of evidence, failure to set forth "'all material evidence on the point'" waives alleged error].)

In his opening brief, Ronald utterly failed to discuss the evidence supporting the trial court's finding Ronald has a monthly income of approximately $9,500. The trial court's statement of decision noted "both accountants" agreed Ronald earns approximately $9,500 per month. Ronald's brief, however, does not acknowledge the experts' shared opinion about his income, much less discuss the substance of either

10

expert's testimony or report. Instead, the brief merely states Joyce's expert Sperry "testified as a witness" and Sperry's report "was received into evidence." Likewise, the brief states Ronald's own expert, Andrew Hunt, "testified" and his report "was admitted into evidence." Nor does Ronald provide pinpoint citations to where the reports can be found in the clerk's transcript; instead, he merely cites the minute order entries noting each report's admission into evidence.

By failing to cite and discuss the expert opinion evidence the trial court relied on in determining Ronald earns $9,500 per month, Ronald forfeited his challenge to the sufficiency of the evidence supporting that finding. (*Rayii*, *supra*, 218 Cal.App.4th at p. 1408.) Given the court's finding Ronald is "currently working" and earning $9,500 per month, Ronald's claim the court abused its discretion by "imput[ing] income to a retired person" (*Reynolds*, *supra*, 63 Cal.App.4th 1373) also fails as a matter of law.[6]

B. *The Trial Court Acted Within its Discretion in Denying Ronald's Requests for Attorney Fees*

Ronald contends the trial court abused its discretion in denying certain of his requests for attorney fees. The contention lacks merit.

1. Applicable Legal Principles

"Under section 2030, subdivision (a), 'the court may, upon (1) determining an ability to pay and (2) consideration of the respective incomes and needs of the parties in order to ensure that each party has access to legal representation to preserve all of the party's rights, order any party . . . to pay the amount reasonably necessary for attorney's

---

[6]    In *Reynolds*, the court reversed for abuse of discretion an order modifying postjudgment a spousal support order, concluding the trial court failed to "base the [modified] spousal support order on an examination of the material change in circumstances caused by Husband's timely retirement. Instead, the court refused to recognize the effect of Husband's retirement and incorrectly applied a 'capacity to earn' standard." (*Reynolds*, *supra*, 63 Cal.App.4th at p. 1379.) The *Reynolds* court recognized "no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed." (*Id*. at p. 1378.)

11

fees and for the cost of maintaining or defending the proceeding.'  The purpose of such an award is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy.  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768; *In re Marriage of Ward* (1992) 3 Cal.App.4th 618, 627.)  [¶]  The court may award attorney fees under section 2030 'where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.' (§ 2032, subd. (a).)"  (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 629 (*Duncan*).)

A prerequisite of an award of attorney fees to a party in a marital dissolution case is a showing of that party's need for money to maintain the proceedings. (*In re Marriage of Gonzales* (1975) 51 Cal.App.3d 340, 344.)  The trial court must therefore consider the respective incomes of the spouses.  (*In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [applying former § 4370, precursor to § 2030].)

"'[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court.  [Citations.]  In the absence of a clear showing of abuse, its determination will not be disturbed on appeal.'  [Citation.]  Thus, we affirm the court's order unless '"no judge could reasonably make the order made. [Citations.]"' [Citations.]"  (*Duncan*, *supra*, 90 Cal.App.4th at p. 630; see *Mooney v. Superior Court* (2016) 245 Cal.App.4th 523, 536.)

2.  Analysis

Between December 2015 and April 2017, the trial court gave Ronald $115,000 for attorney fees from the house sale proceeds held in the trust accounts.  After the April 2017 disbursement to Ronald, however, the court denied his further requests for fees.  Specifically, the court denied four requests, one in July 2017, a few months before trial began, and then three more during trial.  Ronald contends each of those denials was an abuse of discretion, leaving him unable to hire an attorney to represent him in a dissolution with complicated financial issues and where his spouse was represented by

12

counsel.  In fact, Ronald was represented by counsel during most of the litigation; he represented himself in propria persona during the second phase of trial in August 2018.

Ronald's challenge to the orders denying these late fee requests fails because in his opening brief he provides no record references demonstrating he made the requisite evidentiary showing of *need* for an award of attorney fees.  Nor did he present the trial court with the required evidence of "'the respective incomes and needs of the parties[.]'"  (*Duncan*, *supra*, 90 Cal.App.4th at p. 629.)

The lack of record references is not surprising, however, given that none of these four fees requests was a formal motion for fees, with supporting declarations or other documentary evidence relative to the attorney fees issue.  Instead, Ronald's counsel or, later, Ronald himself, simply made oral requests for attorney fees while appearing in court on other matters, such as a trial setting conference (July 2017 request) or during the last day of the first phase of trial (December 2017) or the first day of the continued trial (August 2018).  These oral fee requests lacked the proof to justify an award of fees under section 2030.

As Joyce argues in her brief:  "When [Ronald] claimed he had no funds to obtain counsel, he provided no evidence of that claim, nor of justification for the court to release to him funds that were presumptively Joyce's.  He did not present evidence of his or Joyce's finances, a statutory requirement where fees are sought.  (Fam. Code, § 2030, [subd.] (a)(2).)"  "Ronald claimed poverty, but was unwilling or unable to present proof of his need."

Ronald blames the trial court for "never properly determin[ing] Ronald's actual income" during the trial and for failing to "assure both parties have access to funds to pay for a lawyer."  But it was Ronald's burden to prove his need for attorney fees.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 824 (*Falcone*) [burden of establishing necessity for fees is upon applicant].)  Moreover, at the conclusion of trial, the court found Ronald had a steady income before and during the trial.  The court also

13

found Ronald had withheld over $195,000 due Joyce in spousal support, money which the court could have impliedly found was available to Ronald to pay his attorney fees.

We conclude the trial court acted within its discretion in impliedly finding Ronald did not need an award of attorney fees to continue litigating the case. (*Duncan*, *supra*, 90 Cal.App.4th at p. 630.)

We note Ronald also lodges procedural objections, protesting "no hearing was ever truly held" on these four requests for attorney fees, his requests were "summarily denied," and the court did not make the specific findings required by section 2030, subdivision (a)(2). Ronald can hardly be heard to complain about the trial court's request that he should file a formal motion. Procedurally, the court could hear an oral motion for attorney fees, but Ronald offered no evidence to support his claim of "need" under section 2030 and therefore no basis exists to overturn the judgment. Indeed, the court's request for a formal motion signaled its willingness to decide the issue based on evidence and not Ronald's unsupported claim he lacked the means to pay his attorney.

Finally, Ronald argues the trial court abused its discretion in denying his "limited scope" attorney Elizabeth Nigro's ex parte application on August 10, 2018, to continue the trial just three days before the long-trailing second phase of trial was set to begin. Ronald asserts his prior attorney's substitution out of the case in early January 2018—*eight months before his continuance motion*—was "good cause" for a continuance under rule 3.1332, subsection (c)(4) of the Rules of Court.

Whether to grant a request for trial continuance is a matter of trial court discretion; "[c]ontinuances are granted only on an affirmative showing of good cause requiring a continuance." (*Falcone*, *supra*, 164 Cal.App.4th at p. 823.) Given the circumstances presented to the trial court here, we find the court acted within its discretion in denying Ronald's last minute request to continue the second phase of the trial.

14

C. *Ronald Forfeits His Challenge to the Separate Property Characterization of the Sales Proceeds Held in Trust*

Ronald makes an abbreviated, highly confusing argument challenging the trial court's characterization of the proceeds from the house sale as entirely Joyce's separate property. Ronald's argument begins as follows: "Both parties testified that the funds for the buy back of the home from the bankruptcy estate came from [Ronald's parents], into the revocable living trust of the parties, and then were given to the bankruptcy trustee . . . ." Ronald then makes the mystifying assertion he "was due half of the house proceeds at a minimum" because the funds were "borrowed from the Orson Kindschi Trust, . . . leaving a debt to the Trust rather than receiving any benefit from the Trust."

Ronald does not explain his connection to the "Orson Kindschi Trust" or the significance of the "debt to the Trust" he alleges. Moreover, he fails to discuss any of the evidence the court relied on in finding Joyce had over $1.5 million of separate property equity in the property which she contributed to the community's acquisition of the house. Consequently, by failing to cite and discuss all the material evidence on the issue, Ronald forfeits his challenge to the trial court's finding the sale proceeds were Joyce's separate property. (*Rayii*, *supra*, 218 Cal.App.4th at p. 1408.)

D. *The Trial Court Did Not Violate Any Duties Owed to Ronald as a Pro Se Litigant*

Finally, Ronald contends the trial court abused its discretion by failing to perform duties the court owed him as a pro se litigant.[7] Specifically, Ronald complains

---

[7] In relation to this argument, Ronald filed a request for judicial notice of three publications: "Handling Cases Involving Self-Represented Litigants," a 2019 bench guide for judicial officers published by the Judicial Council, available at https://www.courts.ca.gov/documents/benchguide_self_rep_litigants.pdf; "The Aging Population of Orange County, California and its Impact on Court Services," a 2012 publication of the Institute for Court Management, available at https://cdm16501.contentdm.oclc.org/digital/collection/famct/id/838; and Antecedents of Gray Divorce: A Life Course Perspective published in The Journals of

15

the court failed to refer him to the self-help department of the family court, refused to help him lay a foundation for admission of his expert's report,[8] and generally denied him the assistance he needed "to put on his case."

A judge cannot tell a self-represented litigant what tactic to use, what witness to call, or what motion to file. The court is not the self-represented litigant's lawyer and cannot tell the self-represented litigant what to do next. "In other words, when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267; *In re Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543 [pro per litigants held to same standards as attorneys].)

The trial court owed Ronald none of the duties he claims the court breached. We find the court did not abuse its discretion in its treatment of Ronald as a pro se litigant.

---

Gerontology: Series B, Volume 73, Issue 6, September 2018, Pages 1022–1031, available at https://academic.oup.com/psychsocgerontology/article/73/6/1022/2698907. The request for judicial notice is granted.

[8] Ronald fails to mention the trial court ultimately admitted the report into evidence at trial.

III

DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

17