Filed 3/28/25  Marriage of Werner CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re the Marriage of WERNER. | |
| JENNIFER WERNER,<br><br>      Respondent,<br><br>v.<br><br>TORTSTEN WERNER,<br><br>      Appellant. | A171598<br><br>(Lake County<br>Super. Ct. No. FL217422) |

Torsten Werner challenges the trial court's order modifying Jennifer Werner's spousal support payments and terminating its jurisdiction over spousal support.  We affirm.

BACKGROUND

The parties were married in 1994 and divorced after their children became adults.  In 2023, the court entered a stipulated judgment of marital dissolution setting forth the final settlement of the parties' rights and obligations, including an obligation for Jennifer[1] to pay Torsten $2,000 in monthly spousal support for seven years.  The parties' agreement was put on

_____

[1] For clarity, we refer to the parties by their first names because they share a last name.

1

the record in February 2023, and the stipulated judgment was entered on May 4, 2023.

In June 2024, Jennifer filed a request for order to change and terminate spousal support based on the changed circumstance that she had retired, and her retirement income was significantly less than her prior income. The court conducted a bench trial on her request in August 2024, and Torsten requested a statement of decision at the end of trial.

On August 19, 2024, the court issued its Findings and Order After Hearing. The court modified Jennifer's spousal support obligation to $100 per month beginning on September 1, 2024, for 10 months. At the end of the 10 months, Jennifer would have no further spousal support obligation under Family Code[2] section 4320, and the court's jurisdiction over spousal support would terminate. The court declined to impute any earning capacity to Jennifer and issued Torsten a *Gavron*[3] warning.

In its statement of decision, the court at the outset found the parties had intended Jennifer's $2,000 spousal support payment to supplant Jennifer's payments of household expenses on the parties' home, which had been awarded to Torsten as separate property. By the time of Jennifer's modification request, Torsten had sold the home. The evidence at trial showed that Jennifer retired in June 2024 and her monthly retirement "take home" was almost equal to Torsten's monthly "take home" from his disability payments. Jennifer made $26.30 more a month than Torsten, so the court ordered her to pay him $13.15 a month in spousal support. The court elected to terminate spousal support after two years and award Torsten roughly

---

[2] All statutory references are to the Family Code.

[3] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 (*Gavron*).

2

what he would have received over the course of the remaining 70 months of the original agreement in a shorter time frame.

The court stated that it had "considered all 14 factors [under section 4320]," but it described only the relevant factors as follows.

In its statement of decision, the court first discussed "Sufficiency of Earning Capacities to Maintain [the] Marital Standard of Living." (§ 4320, subd. (a).) Because no marital standard of living had been established in the original marital dissolution proceeding, the court found that, based on the limited information available, the couple lived a middle-class to lower middle-class lifestyle during marriage. But the evidence at trial established that Torsten had a "much higher standard of living" than Jennifer after separation. Torsten had cash on hand, he lived on a boat he had purchased outright, he sailed, and he traveled extensively. Jennifer had purchased a mortgaged home jointly with her mother, she would have to "tighten her belt," and she was unable to pay property taxes without a loan from her mother. The court concluded that Torsten did not need spousal support to maintain his standard of living.

Addressing the "Supporting Party's Ability to Pay," the court recognized that it must consider Jennifer's ability to pay, including her earning capacity, earned and unearned income, assets, and standard of living, as well as her ability and opportunity to obtain employment that would generate higher income. (§ 4320, subd. (c).) Jennifer took " 'early' "retirement at age 58, but the court found this was because of stress and mental exhaustion that Jennifer tried to " 'fix' " by changing employment locations. The court accepted that Jennifer "simply was not capable of working any longer due to mental stress." The court found that Jennifer's mental exhaustion was sufficient to show that she could not simply get

3

additional employment, and she did not have the ability to pay spousal support out of her retirement benefits. Torsten, on the other hand, claimed he could not work because of physical disability, but the court found significant that he was unwilling to consider any employment, even employment that did not require physical labor.

As to the "Parties' Needs" based on the marital standard of living (§ 4320, subd. (d)), Jennifer established that if she were to pay $2,000 in monthly spousal support, she would have only $1,500 a month to pay all her expenses. Torsten had not established that Jennifer was receiving or would receive money from a trust. The court found that Torsten did not appear to need money. He received money from the sale of the home, and he took trips to Europe, sailed his boat between Hawaii and California, fished, skydived, and lived a lifestyle filled with recreation and leisure trips. "Thus, when the Court viewed all the evidence provided, [Torsten] does not need the spousal support when weighed against [Jennifer's] need for the money for basic expenses, rather than leisure living."

In assessing the "Length of Marriage," the court acknowledged the parties had a long marriage relevant to the duration of support. (§ 4320, subd. (f).)

Regarding the "Age and Health of Parties," Torsten claimed to be disabled and unable to work, and the evidence established he was on disability retirement and he had many surgeries in the past. (§ 4320, subd. h).) However, the evidence established that he led an active lifestyle, so the court found that it was not credible that his health and age were any worse "over all" than those of Jennifer "who seemed overwhelmed by the mental taxation of being an occupational therapist for 25 years with special

4

needs children, which had deteriorated her physical and mental health." The court found this factor to be neutral.

Addressing the parties' "Relative Hardships," "[o]n balance the Court finds that continuing to pay spousal support would be more of a hardship to [Jennifer] than a hardship to [Torsten] to cease receiving it." (§ 4320, subd. (k).)

With respect to the "Goal of Self-Support" (§ 4320, subd. (*l*)), the court acknowledged its duty to "consider the goal that the supported party will be self-supporting within a reasonable period of time," and observed that it could consider if the party seeking support had unreasonably delayed or refused to seek employment consistent with his or her ability. The court found that this was a lengthy marriage and noted that although Jennifer was the main " 'breadwinner,' " that circumstance was not due to an arrangement between the parties (such as a stay-at-home spouse for child care). Instead, Torsten was not consistently employed, and he had been injured on various jobs such that he did not work for extended periods of time. The court acknowledged, but rejected, Torsten's claim that he was too disabled to work in light of the trial evidence showing his active lifestyle, including that he free dove with sharks. The court also found that Torsten's claim that he could not speak sufficient English to work was not credible because he had prior jobs that required English-speaking skills.

Considering the evidence, the relevant factors, and Jennifer's change in income, the court found that circumstances warranted modification of spousal support. The court restated that a supporting spouse electing to retire must make reasonable efforts to obtain employment, but it reiterated that Jennifer was credible and she established she was simply unable to work. The court

5

modified spousal support to $100 monthly for ten months and issued a *Gavron* warning to Torsten.

Torsten timely appealed.

DISCUSSION

*A. Modifiability of the Stipulated Judgment*

Torsten first argues that the terms of the parties' stipulated judgment control, and he appears to suggest that spousal support could not be modified under the stipulated judgement's plain terms. As set forth *post*, we must resolve this issue against Torsten.

Spousal support orders based on the parties' agreement or stipulation are enforceable and modifiable or terminable in the same manner as any court order for spousal support except to the extent the parties have specifically agreed in writing or orally in open court that spousal support is not subject to modification or termination. (§§ 3590, 3651, subd. (d); *In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.)

Here, our review of Torsten's claim is hindered by the lack of an adequate record and reporter's transcript. Where an appellant attacks a judgment but supplies no reporter's transcript, we deem the court's statement of decision to be supported by the evidence. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) The court's statement of decision here does not recite the terms of the stipulated judgment, but the court modified the stipulated judgment, which showed the court concluded that the agreement was modifiable. Torsten has not included the stipulated judgment in the record on appeal, and he did not provide a reporter's transcript of the August 2024 hearing or the February 2023 hearing wherein the parties put their agreement on the record. We therefore presume that the stipulated judgment allowed the court's modification. (*Ibid.*; see also *Hotels Nevada, LLC v. L.A.*

6

*Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [failure to provide an adequate record on an issue requires that the issue be resolved against appellant].)

*B. Section 4320*

Torsten's next contention is that that trial court abused its discretion by failing to consider the section 4320 factors, but this claim also fails. (See *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1377 [modification order reviewed for abuse of discretion].)

When making a spousal support award, the court must consider various factors. (§4320, subds. (a)–(n).) As is relevant here, these factors include the parties' earning capacities (§ 4320, subd. (a)), abilities to pay (*id.*, subd. (c)), needs (*id.*, subd. (d)), obligations and assets (*id.*, subd. (e)), and ages and health (*id.*, subd. (h)). The court must also consider the duration of the marriage (*id.*, subd. (f)), the goal that the supported party shall be self-supporting within a reasonable period of time (*id.*, subd. (*l*)), the balance of hardships (*id.*, subd. (k)), and any other factor deemed "just and equitable" (*id.*, subd. (n)).

The record shows that the trial court evaluated the relevant section 4320 factors. The court considered the parties' almost equal monthly "take home" (retirement v. disability). Torsten claims that the court erred in failing to impute income to Jennifer because she retired early at age 58, but the court found Jennifer credibly established that she was unable to work and rejected Torsten's bad faith accusations. (See *In re Marriage of Reynolds*, *supra*, 63 Cal.App.4th at p. 1378 ["capacity to earn standard" may only be applied where there is evidence of ability to work].) The court recognized that the parties had lived a middle-class to lower middle-class lifestyle during

7

the marriage, but Torsten had a better standard of living than Jennifer after the dissolution.

The court considered that the original $2,000 monthly support payment had been intended to supplant payment for household expenses on the house Torsten kept in the divorce, Torsten had since sold the house, and Jennifer was unable to pay $2,000 per month out of her retirement funds given her expenses.  Torsten had cash on hand and a boat, while Jennifer had a mortgaged house and needed a loan to pay property taxes.  The court acknowledged that Torsten had been unemployed in the past and Jennifer had been the " 'breadwinner,' " but the court found this was not because of an agreement whereby Torsten devoted time to domestic duties.  The court also recognized Torsten's surgeries and disability benefits, but it found his alleged inability to work at all was not credible.  The court considered the parties' age and health neutrally and acknowledged the length of the marriage.  On balance, the court determined that Jennifer would suffer greater hardships if she had to pay $2,000 per month than Torsten would if he did not receive that amount.

In sum, the trial court considered the proper factors under section 4320, and we deem the court's factual findings to be supported by substantial evidence.  (*Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)  Furthermore, given the state of the record on appeal, Torsten cannot point to any additional evidence relevant to the section 4320 factors that the court should have considered.  It cannot fairly be said that no judge would reasonably make this same order.  (See *In re Marriage of Reynolds*, *supra*, 63 Cal.App.4th at p. 1377.)

## DISPOSITION

The court's order is affirmed.

8

BROWN, P. J.


WE CONCUR:

STREETER, J.
GOLDMAN, J.


*In re Marriage of Werner* (A171598)