Filed 7/24/13; pub. order 8/20/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NADJA RAYII, | B236626 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC042687) |
| v. | |
| MELVIN OVIDIO GATICA et al., | |
| Defendants and Respondents. | |

---

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

R. Rex Parris Law Firm, R. Rex Parris and James P. Fowler; Liddy Law Firm and Donald G. Liddy for Plaintiff and Appellant.

Murchison & Cumming, Edmund G. Farrell III; Hunter, Molloy & Salcido and Richard Salcido for Defendant and Respondent Melvin Ovido Gatica.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Lane J. Ashley, Caroline E. Chan; Kramer & Kramer and Mark D. Kramer for Defendant and Respondent Carlos Seciada.

Horvitz & Levy, David M. Axelrad, Daniel J. Gonzalez; and J. Dean Rice for Defendant and Respondent Gateway Insulation, Inc.

---

Nadja Rayii suffered injuries when a car being driven by Melvin Ovidio Gatica collided head-on with the car she was driving. She appeals a judgment after a jury trial and the denial of her motion for judgment notwithstanding the verdict. She challenges the jury's finding that Gatica was not acting in the course and scope of his employment for Gateway Insulation, Inc. (Gateway), at the time of the collision; the denial of relief against Carlos Seciada, who she contends was the registered owner of the car driven by Gatica; and the denial of her new trial motion on grounds of attorney misconduct, irregularity in the proceedings and inadequate damages. We conclude that she has shown no prejudicial error and will affirm the judgment and the denial of her motion for judgment notwithstanding the verdict.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

Gatica was driving a 1991 Honda Accord southbound on a two-lane road near Newhall on May 3, 2006, at approximately 5:26 p.m. when he crossed the double-yellow center line while negotiating a curve and crashed head-on into Rayii, who was traveling northbound. Rayii suffered a fractured vertebra, fractured ribs, a bruised knee and other injuries. She was approximately 61 years old at the time.

Gatica was employed by Gateway at its warehouse in Valencia at the time of the collision. His supervisor had sent him to a jobsite in Valencia, and he was returning from the jobsite at the time of the collision. The evidence is conflicting as to whether he was driving home or returning to the warehouse. Gatica purchased the Accord from his

2

friend, Seciada, the day before the collision.  He was not licensed to drive in California and had never driven in the United States before the day he purchased the car.

2.     *Trial Court Proceedings*

Rayii filed a complaint against Gatica and Seciada in April 2008 alleging a single count for negligence.  She substituted Gateway for a fictitious defendant in December 2009.  A jury trial commenced in June 2011.  Rayii moved for a directed verdict against Gateway arguing that the evidence compelled the conclusion that Gatica was returning from a "special errand" for Gateway, his employer, at the time of injury and therefore was acting within the scope of his employment.  The trial court denied the motion.

The jury returned a special verdict finding that Gatica was negligent, that his negligence was a substantial factor in causing harm to Rayii, that he was not acting in the course and scope of his employment at the time of injury, that Gateway did not negligently hire or supervise Gatica and that Seciada was not an owner of the vehicle at the time of injury.[1]  The jury also found that Rayii's damages were $100,000, consisting of $60,000 for "Past Harm and Loss, including physical pain, mental suffering, loss of enjoyment of life, loss of health, and loss [*sic*] independence," $13,000 for "Future Harm and Loss, including physical pain, mental suffering, loss of enjoyment of life, loss of health, and loss [*sic*] independence," and $27,000 for future medical expenses.  The

---

[1]     The special verdict form instructed the jury to skip the further questions relating to negligent entrustment if it found that Seciada was not an owner of the vehicle at the time of injury.  Accordingly, the jury did not answer the question whether Seciada knew or should have known that Gatica was unfit to drive.

3

jury wrote on the verdict form that the $60,000 figure "includes reimbursement for $45,000 out of pocket expense."

The trial court entered a judgment on the special verdict on July 13, 2011, awarding Rayii a total of $100,000 in damages against Gatica and awarding her no relief against Seciada and Gateway.

Rayii moved for a new trial on grounds of inadequate damages, insufficiency of the evidence to support the findings that Gatica was not acting in the course and scope of his employment and that Seciada was not an owner of the vehicle at the time of injury, and irregularity in the proceedings. She also moved for judgment notwithstanding the verdict as to Gateway. The trial court denied the motions. Rayii timely appealed the judgment and the denial of her motion for judgment notwithstanding the verdict.

### CONTENTIONS

Rayii contends (1) the evidence compels the conclusion as a matter of law that Gatica was acting in the course and scope of his employment for Gateway at the time of the collision, so the denial of her motion for judgment notwithstanding the verdict was error; (2) Seciada is liable as the registered owner of the Accord at the time of the collision; (3) Seciada is liable for negligent entrustment; (4) Gateway's counsel committed attorney misconduct in opening statement; (5) the calling of three of the defendants' expert witnesses out of order and a statement made by Dr. Klapper deprived her of a fair trial; (6) the award of future economic damages is inadequate; and (7) the past and future noneconomic damages awarded are inadequate.

4

## DISCUSSION

1. *Rayii Has Not Shown that Gatica Was Acting in the Course and Scope of his Employment at the Time of Injury*

Rayii contends there is no substantial evidence to support the jury's finding that Gatica was not acting in the course and scope of his employment at the time of the collision and the evidence compels the conclusion as a matter of law that he was acting in the course and scope of employment. She argues that this is so because the evidence shows that Gatica was returning to Gateway's warehouse in Valencia from the jobsite in Lancaster. She also argues that the evidence shows that Gatica was on a "special errand" for his employer, so he was acting in the course and scope of employment regardless of whether he was returning to the warehouse. Rayii cites Gatica's testimony that he was returning to the warehouse and other evidence to this effect and cites evidence that he was on a special errand, but she fails to cite and discuss contrary evidence in the record.

An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; *Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80.) An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to

5

support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment. An appellant, such as Rayii, who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment. (*Marriage of Fink*, *supra*, at p. 887; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Accordingly, we conclude that substantial evidence supports the finding that Gatica was not acting in the course and scope of his employment at the time of injury and that Rayii has shown no error.

In any event, Gatica testified that he arrived at the warehouse in Valencia that morning at 5:30 a.m. His supervisor sent him to Lancaster at about 10:00 a.m. The collision occurred at 5:26 p.m. on his return trip on a road that he would have taken to go either home or to the warehouse. His supervisor testified that he did not require or expect Gatica to return to the warehouse if he finished a job late in the afternoon, that Gatica would have called if he planned to return to the warehouse and that Gatica did not call him that afternoon. His supervisor also testified, contrary to Gatica's testimony, that there was no company policy requiring workers to return to the warehouse at the end of the workday. We conclude that the jury reasonably could find based on this evidence that Gatica was not returning to the warehouse at the time of the collision, but instead was going home. The evidence also shows that Gatica worked both at the warehouse and occasionally as an installer at jobsites. We conclude that the jury reasonably could find based on this evidence that the Lancaster job was not an extraordinary "special errand," but instead was part of Gatica's routine work duties.

6

2.     *Rayii Cannot Argue for the First Time on Appeal that Seciada Is Liable as the Registered Owner*

The jury found that Seciada was not an owner of the Accord at the time of injury, as stated. Rayii does not challenge the sufficiency of the evidence to support this finding.[2] Instead, she argues for the first time on appeal that Seciada is liable as the registered owner of the vehicle at the time of injury pursuant to Vehicle Code section 17150. Rayii did not assert this theory of liability at trial or in her new trial motion.

An appellate court generally will not consider a new theory of liability for the first time on appeal. (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874.) We have the discretion to consider for the first time on appeal an issue of law based on undisputed facts, but we will not consider a new issue where the failure to raise the issue in the trial court deprived an opposing party of the opportunity to present relevant evidence. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 772; *Richmond*, *supra*, at p. 879.)

Vehicle Code section 17150 states, "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." The owner's liability under the statute for death or

---

[2]     Gatica testified that he purchased the Accord from Seciada two days before the collision. No conflicting evidence was presented at trial.

7

injury to one person is limited to $15,000. (*Id.*, § 17151, subd. (a).) For purposes of the statute, the transfer of ownership to a motor vehicle is effective only if (1) the transferor has endorsed and delivered to the transferee the certificate of ownership, and the transferee has delivered the certificate to the Department of Motor Vehicles (DMV) or placed it in the United States mail addressed to the DMV; or (2) the transferor has delivered to the DMV or placed in the United States mail addressed to the DMV the appropriate registration or transfer documents. (*Id.*, §§ 5600, subd. (a), 5602.)

Seciada did not testify at trial, and the evidence does not conclusively show whether he did or did not timely deliver or mail the appropriate transfer documents to the DMV. Although Gatica testified that he never received or completed any paperwork in connection with the sale, this does not preclude the submission of paperwork by Seciada directly to the DMV. The traffic collision report completed by a California Highway Patrol officer stating that Seciada was the owner of the vehicle also fails to conclusively establish that fact, and the officer did not testify on the source of that information. If the significance of the issue had been apparent at trial, it seems likely that further evidence could have been presented as to the DMV's records. We therefore conclude that the evidence does not conclusively establish Seciada's liability as the registered owner and that this issue cannot be raised for the first time on appeal.

3. *Rayii Has Shown No Error with Respect to Negligent Entrustment*

Rayii contends Seciada is liable for negligent entrustment because Gatica was unfamiliar with the rules of the road and was unfit to drive and Seciada should have known that. Rayii does not explain how the trial court or the jury purportedly erred but

8

appears to argue that the evidence compels the conclusion that Seciada was negligent in entrusting the vehicle to Rayii. She cites evidence that Gatica was unfit to drive, but cites no evidence that Seciada knew or should have known that.

The trial court instructed the jury that Seciada could be liable for negligent entrustment only if he owned the vehicle at the time of injury. The jury did not decide whether Seciada knew or should have known that Gatica was unfit to drive because the special verdict form instructed the jury to skip that question if it found that Seciada was not an owner of the Accord. Rayii does not challenge the special verdict form, has shown no error in the finding that Seciada was not an owner and therefore has shown no error in the jury's failure to find that Seciada knew or should have known that Gatica was unfit to drive. Moreover, Rayii's perfunctory argument fails to show that the evidence compels the conclusion as a matter of law that Seciada knew or should have known that Gatica was unfit to drive.

4.      *Rayii Failed to Preserve Her Claim of Attorney Misconduct*

Rayii contends statements made by Gateway's counsel in opening statement violated an order on her motion in limine and constituted attorney misconduct justifying a new trial. Rayii filed a motion in limine to preclude any evidence of or reference to Gateway's "solvency, bankruptcies, judgments, or other debts of any kind." Gateway's counsel argued at the hearing on the motion that he was not aware of any bankruptcy but that the jury might wonder why other employees from Gateway's Valencia branch were not testifying at trial. He argued that it was appropriate to briefly explain to the jury that the Valencia branch had closed "because anybody in the construction business

9

such as Gateway, they are now down to one branch." The trial court stated that it would grant the motion, "but they can discuss downsizing of the company or that that branch no longer exists or something to that effect if it comes out."

Rayii's counsel then argued, "We're just concerned about the suggestion that maybe they're not doing well financially. So if they want to say that branch is no longer operating, I don't have a problem with that. But if they want to say it in the context of we're not doing well because construction is down, I think that's improper." Gatica's counsel suggested that "they be allowed to say it's closed but not give a reason for it." The trial court stated, "That's fine."

Gateway's counsel stated in opening statement that at the time of the collision Gateway had 127 employees in four different branches, but at the time of trial it had only 25 employees and a single branch in Corona. He referred to the economy and its impact on the construction industry, stating, "if we fast-forward five years into the economy we're in today, they now have—Corona is the only office left. And they employ about 25 people. So if you're wondering why we don't have more witnesses here, it's because this company has shrunk over the years as has been the case with the construction business." Rayii's counsel did not object at the time or request an admonition to the jury.

Rayii's counsel argued the following day that it was improper for Gateway's counsel to mention downsizing because of the economy. The trial court stated, "Well, that's already done. We're not going to go into that anymore anyway, right? Everybody agree?" The court stated further, "Nobody is going to go into that area,

10

insurance, downsizing. Whatever's been said has already been said. I understand [plaintiff's counsel]. He doesn't want anything else to come up, like what you brought out about the downsizing or about insurance, which is understandable."[3] Again, Rayii's counsel did not request an admonition to the jury.

Attorney misconduct is a ground for a new trial (Code Civ. Proc., § 657, subd. (1)). (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870.) Attorney misconduct can justify a new trial only if it is reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802 (*Cassim*); *Decker*, *supra*, at p. 872.)

A party ordinarily cannot complain on appeal of attorney misconduct at trial unless the party timely objected to the misconduct and requested that the jury be admonished. (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 891-892.) The purpose of these requirements is to allow the trial court an opportunity to remedy the misconduct and avoid the necessity of a retrial; a timely objection may prevent further misconduct, and an admonition to the jury to disregard the offending matter may eliminate the potential prejudice. (*Cassim*, *supra*, 33 Cal.4th at pp. 794-795; *Horn v. Atchinson, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610.) The failure to timely object and request an admonition waives a claim of error unless the misconduct was so prejudicial that it could not be cured by an admonition (*People v. Cunningham* (2001) 25 Cal.4th 926,

---

[3]    Rayii's counsel also complained to the trial court that Gateway's counsel had improperly referred to insurance in opening statement.

11

1000-1001; *Whitfield*, *supra*, at p. 892), an objection or request for admonition would have been futile (*People v. Hill* (1998) 17 Cal.4th 800, 820) or the court promptly overruled an objection and the objecting party had no opportunity to request an admonition (*Cassim*, *supra*, at pp. 794-795). Attorney misconduct is incurable only in extreme cases. (*Horn*, *supra*, at p. 610; see, e.g., *Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 351-355 (*Simmons*).)

Rayii did not timely object to the statements made by Gateway's counsel in opening statement, but instead raised the issue for the first time the following day. Even then, Rayii did not request an admonition to the jury, but instead seemed content to rely on the trial court's admonition to opposing counsel. Rayii has not shown that the purported misconduct was so persistent or egregious as to justify the conclusion that it was incurable. We conclude that Rayii's failure to timely object and request an admonition to the jury precludes our consideration of the point on appeal.

5. *Rayii Has Not Shown that the Calling of Defense Witnesses Out of Order or Statements Made by Dr. Klapper Deprived Her of a Fair Trial*

a. *Order of Proof*

Rayii contends the calling of three of the defendants' expert witnesses out of order and a statement made by Dr. Klapper deprived her of a fair trial. The trial court granted a request by Seciada's counsel to call Dr. Klapper, an orthopedic surgeon, to testify out of order during plaintiff's case-in-chief in order to accommodate his family vacation plans, over plaintiff's objection. Dr. Klapper was the third witness to testify at trial and interrupted the testimony by Rayii's son. Dr. Klapper testified that he believed

12

that Rayii bruised her knee in the collision but that the bruise had healed, that other injuries to her knee did not result from the collision and that Rayii's proposed life care plan included medical care that either was not needed or related to injuries that did not result from the collision.

Rayii later agreed to allow Gateway to call Dr. Sam Maywood, an anesthesiologist who also had family vacation plans, to testify out of order during plaintiff's case-in-chief. Dr. Maywood testified on Rayii's proposed life care plan. The trial court also allowed Seciada's counsel to call Dr. Amy Sutton, a psychologist, to testify out of order due to her family vacation plans, over plaintiff's objection. Dr. Sutton proposed an alternative life care plan and interrupted the testimony by plaintiff's expert witness Sandra Callaghan, who presented Rayii's proposed life care plan. Rayii objected to further interrupting her case-in-chief, particularly after Dr. Maywood's testimony out of order.

Code of Civil Procedure section 607 prescribes the order of proceedings at trial, "unless the court, for special reasons otherwise directs." Evidence Code section 320 states that the court has the discretion to regulate the order of proof: "Except as otherwise provided by law, the court in its discretion shall regulate the order of proof." Accordingly, we generally review a trial court's ruling as to the order of proof at trial for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 207.) Specifically, the court exercises discretion in ruling on a request to call a witness out of order, and its ruling will not be disturbed absent a clear showing of abuse of discretion. (*Estate of Lefranc* (1950) 95 Cal.App.2d 885, 887-888.)

13

"An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)

Rayii argues that the calling of the three defense witnesses out of order and particularly the interruption of Callaghan's testimony on Rayii's proposed life care plan "caused a great deal of prejudice to the Plaintiff and resulted in an insufficient verdict." Her argument is conclusory and fails to adequately explain why the decision to allow the witnesses to testify out of order was an abuse of discretion in light of the alternatives facing the trial court at the time. We conclude that the trial court acted within its discretion by allowing the witnesses to testify out of order so as to avoid having to continue the trial date, force the witnesses to cancel their vacation plans or forego their testimony. Rayii has shown no error.

     b.     *Dr. Klapper's Statements*

Rayii also argues that statements made by Dr. Klapper on cross-examination suggested that Rayii was faking her injuries and that everyone's insurance rates would increase if she succeeded on her claim for damages. She argues that the statements were improper and prejudicial and should have been stricken.

Rayii's counsel asked Dr. Klapper a series of questions about his annual income from testifying in court and his planned trip to Hawaii. The trial court sustained objections to those questions as irrelevant and argumentative. The questioning and testimony proceeded:

Plaintiff's counsel: "$600,000, the money you make testifying, how does that help patients?"

Dr. Klapper: "Well, first of all, I have to pay my staff, so I don't—"

Plaintiff's counsel: "That's not my question. How does it help patients?"

Dr. Klapper: "It keeps people from being abused in accidents where a lawyer can say they are badly injured, which will increase the insurance that all of us have to pay. When there is real pathology, it's justified. But where there is not real pathology, each and every one of these folks is a potential patient."

Plaintiff's counsel: "Move to strike as nonresponsive."

The court: "Overruled."

"A witness must give responsive answers to questions, and answers that are not responsive shall be stricken on motion of any party." (Evid. Code, § 766.) A motion to strike must be timely made and must clearly state the specific ground for the motion. (*Id.*, § 353, subd. (a).) Moreover, "[a] motion to strike must be directed with precision to the matter sought to be stricken. [Citation.] A motion to strike out inadmissible evidence may properly be denied where it is general and embraces evidence which is admissible as well as that which is inadmissible. [Citations.]" (*Rose v. State of California* (1942) 19 Cal.2d 713, 742; see 3 Witkin, Cal. Evidence (4th ed. 2000)

15

Presentation at Trial, § 383, pp. 475-476.)  If part of the answer is responsive and part is nonresponsive, the moving party must specify the nonresponsive part, and a motion to strike the entire answer as nonresponsive may properly be denied.  (*Bates v. Newman* (1953) 121 Cal.App.2d 800, 804.)

We can reverse a judgment based on the erroneous admission of evidence only if it is reasonably probable that the appellant would have obtained a more favorable result absent the error, so the error resulted in a miscarriage of justice.  (Cal. Const., art. VI, § 13; Evid. Code, § 353, subd. (b); *People v. Richardson* (2008) 43 Cal.4th 959, 1001.)

We need not decide whether Dr. Klapper's answer was nonresponsive in its entirety because we conclude that Rayii has failed to show any likely prejudice. Dr. Klapper testified that he believed that Rayii suffered a bruised knee as a result of the collision and that he was not suggesting that she was faking her injuries.  He provided medical reasons for his conclusion that the more serious injuries to her knee predated the collision.  The trial court instructed the jury not to consider insurance and that the presence or absence of insurance was totally irrelevant, and we presume that the jury followed the instructions absent some indication to the contrary.  (*Cassim v. Allstate Ins. Co., supra,* at pp. 803-804.)  In light of the evidence and the instructions, we conclude that any error in the denial of the motion to strike was nonprejudicial.

16

6. *The Damages Are Not Inadequate*

a. *Future Economic Damages*

Rayii contends the award of only $27,000 in future economic damages is inadequate in light of the evidence of her need for future medical care. The trial court denied Rayii's motion for a new trial on this ground.

"Code of Civil Procedure section 657 states: 'A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.' A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872 [135 Cal.Rptr. 647, 558 P.2d 545].) An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Accordingly, we can reverse the denial of a new trial motion based on insufficiency of the evidence or [inadequate or] excessive damages only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 751-752.)

17

Defendants presented evidence that Rayii had osteoarthritis throughout her body and a meniscal degenerative tear in her knee before the collision. They also elicited testimony on cross examination that a compression fracture in her vertebra and rib fractures that she suffered as a result of the accident had healed at the time of trial. Other evidence indicated that she suffered trauma to her back in November 2009, more than three years after the collision, and Rayii acknowledged that she "may have fallen" at that time. Rayii fails to acknowledge or discuss this evidence and other evidence tending to show that the majority of any future medical care needed did not relate to injuries suffered in the collision and that much her proposed future medical care was not needed. We need not discuss that evidence in detail. We conclude that the evidence was in substantial conflict and that Rayii has shown no abuse of discretion in the denial of her new trial motion on the ground of inadequate damages with respect to future medical expenses.

b.    *Past and Future Noneconomic Damages*

Rayii contends the awards of only $15,000 in past noneconomic damages and $13,000 in future noneconomic damages are inadequate in light of the evidence.[4] The trial court denied Rayii's motion for a new trial on this ground.

---

[4]    Rayii argues that the jury's interlineation on the verdict form indicates that it awarded only $15,000 for past noneconomic damages and $45,000 for past medical expenses, despite the fact that she did not seek a recovery of past medical expenses. We need not decide the point because we conclude that Rayii has shown no abuse of discretion regardless of whether the jury awarded $15,000 or $60,000 in past noneconomic damages.

18

The amount of noneconomic damages to award for pain and suffering is a subjective determination that is particularly within the discretion of the jury. (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893.)  The evidence of Rayii's preexisting conditions and other medical conditions unrelated to the collision, if credited by the jury, tends to show that the majority of her past and future pain and suffering is unrelated to the collision.  Again, Rayii fails to discuss that evidence.  We conclude that the evidence was in substantial conflict and that Rayii has shown no abuse of discretion in the denial of her new trial motion on the ground of inadequate damages with respect to past and future noneconomic damages.

### *DISPOSITION*

The judgment and the order denying the motion for judgment notwithstanding the verdict are affirmed.  Defendants are entitled to recover their costs on appeal.

                                                            CROSKEY, J.

WE CONCUR:


        KLEIN, P. J.


        ALDRICH, J.


19

Filed 8/20/13

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| NADJA RAYII, | B236626 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC042687) |
| v. | |
| MELVIN OVIDIO GATICA et al., | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |


THE COURT:

The opinion in the above-entitled matter filed on July 24, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]