Filed 7/28/23  Isom v. MacCarthy CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MICHAEL R. ISOM, | B315031 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. MC025723) |
| BRANDON T. MACCARTHY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner and Timothy J. Buchanan, for Defendant and Appellant.

Kuzyk Law and Robert Ryan, for Plaintiff and Respondent.

Respondent Michael R. Isom (Isom) brought this action against appellant Brandon T. MacCarthy (MacCarthy) for injuries allegedly sustained in a motor vehicle accident. Isom alleged he was a passenger in MacCarthy's motor vehicle and that MacCarthy negligently collided into a concrete culvert while driving under the influence of alcohol. At trial, MacCarthy attempted to show that Isom chose to ride in a vehicle with a driver who he knew was intoxicated. The jury returned a verdict in Isom's favor, finding MacCarthy caused Isom's damages. The jury also found Isom was negligent, allocating 25 percent of the fault to him. On appeal from the judgment entered on the verdict, MacCarthy argues: (1) that the trial court erred by denying MacCarthy's motion in limine to exclude or limit the introduction of photographs, including pictures of the accident scene and of Isom in the hospital, (2) the trial court erred by improperly reading a question from a juror to a witness about drugs at MacCarthy's residence, (3) the trial court erred by refusing MacCarthy's proposed jury instruction explaining the meaning of a nolo contendere plea, (4) that Isom's trial counsel engaged in misconduct during his closing argument, and (5) that the cumulative effect of the asserted errors prejudiced MacCarthy. We conclude that MacCarthy has forfeited many of his contentions, and to the extent he has preserved others, he has failed to show prejudicial error. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The June 3, 2014, Accident

Isom and MacCarthy were co-workers and members of the International Brotherhood of Electrical Workers Union. On June 3, 2014, Isom and MacCarthy left work together in MacCarthy's vehicle to go to a restaurant in Palmdale. Isom and MacCarthy stopped at a liquor store to purchase whiskey and were drinking it on the way to the restaurant, where they continued drinking alcoholic beverages. They then went to McCarthy's residence, where Isom was also temporarily staying. Two other residents of the home, Shane Ciaccio (Shane) and Dannye Milam (Dannye),[1] were there when Isom and MacCarthy arrived. Shane and Dannye noticed that Isom and MacCarthy appeared to be "buzzed" from the alcoholic drinks.

After discovering that Isom left his cell phone at the restaurant, Isom and MacCarthy returned to retrieve it. They then returned to the residence, and later set out in MacCarthy's vehicle, intending to go to a gentlemen's club in Victorville. While driving with Isom as his passenger, MacCarthy ran a stop sign, crashed through a chain link fence into a concrete wash, and directly hit a culvert. Blood drawn at the hospital revealed that MacCarthy's blood alcohol level was 0.22, and Isom's was 0.19. MacCarthy was subsequently charged with felony driving under the

---

[1]    The parties provide that Dannye and Shane were married after the incident, and so Dannye was named Dannye Ciaccio at the time of trial. We will refer to them by their first names.

3

influence of alcohol and causing injury, to which MacCarthy entered a nolo contendere plea.

Isom sustained multiple injuries from the accident, including a traumatic brain injury, multiple facial fractures, a collapsed lung, loss of sight in his left eye, and a fractured right foot and ankle. He was hospitalized for approximately one month before being transferred to a rehabilitation center for more than six months. Isom filed his complaint against MacCarthy asserting a single cause of action for negligence. Trial commenced on May 4, 2021, and continued for 14 court days.

## B. Trial Evidence and Motions in Limine

Isom and MacCarthy filed numerous motions in limine prior to trial. As relevant to the appeal, MacCarthy's motion in limine No. 7 sought to exclude all photographs of the accident scene and of Isom's injuries on the grounds that they were irrelevant, cumulative, and prejudicial to MacCarthy. The motion was denied. At trial, 176 photographs of the area of the accident taken by the California Highway Patrol (CHP) were admitted into evidence during a CHP sergeant's testimony about the crash. Additionally, nine photographs of Isom's injuries, including pictures of him in the hospital, were displayed during the testimony of one of Isom's treating physicians along with an x-ray image of his facial injuries. Isom further introduced 14 photographs of him and his family post-accident during his wife's testimony. At trial, MacCarthy objected to some of the

4

photographs under Evidence Code section 352 and to others as cumulative.

MacCarthy's motion in limine No. 3 sought to exclude "golden rule" and "reptile theory" arguments, which he identified as "any questioning, testimony, argument, and evidence that jurors should base their verdict on damages in an amount that the jurors' [sic] would charge to endure similar injuries or that a verdict for the plaintiff will somehow make the community a safer and better place to live and work." The motion was denied.

Once the trial began, MacCarthy called Dannye as a witness. Dannye testified regarding the night's events and MacCarthy's alcohol consumption. Dannye testified that the home's residents would share a "six-pack" during the week and a bottle of whiskey every weekend. During her direct examination by MacCarthy's counsel, Dannye stated that she "smoked a bowl of marijuana" the night of the incident. Further, in describing the interactions of Isom, MacCarthy, Shane, and herself that night, Dannye testified that "[t]here may have been a couple of casual games of beer pong." Further, during Dannye's cross-examination, Isom's counsel read the following from Dannye's deposition transcript about how Dannye, at some point, came into possession of MacCarthy's car keys:

"'Question: How did you come to have the keys? Who gave them to you?

Answer: I - I really don't remember.  I think I might have gotten them from [MacCarthy] and I remember looking at both of them and, you know, you guys shouldn't drive and why do you want to go out to the strip club and then da, da, da.  And I remember saying, "Let's get drugs and just wait here."  And I can't -- I can't remember the whole thing.'"

Shortly following this exchange, an off the record discussion took place at the bench between counsel for the parties and the court.  The court then noted that the jury had a few questions for Dannye, which the court read to her.  One of the juror questions read was, "[w]as there ever any other type of drug besides alcohol and weed at the house?"  Dannye responded, "Yes."  After the juror questions concluded, Isom's counsel asked Dannye in redirect what other drugs would be at the house, to which an objection by MacCarthy's counsel was sustained.

## C.    Jury Instruction

MacCarthy proposed a jury instruction regarding his nolo contendere plea, Special Instruction No. 8, which read, "a party in a subsequent civil action may contest the truth of any matters admitted to a prior guilty plea [sic] present all facts surrounding the same including the nature of the plea." The trial court refused the instruction because there was no evidence introduced about the effect of a nolo contendere

6

plea or whether it would be treated like a guilty plea at trial. MacCarthy argued the instruction was necessary to clarify that "the defense in this particular case is that Mr. Isom's negligence was the cause of his own injuries," as the main issue was "showing the comparative negligence of Mr. Isom." The trial court, however, determined that this theory was covered by the comparative fault instruction it gave the jury based on California Civil Jury Instruction (CACI) No. 405.

## D. Closing Arguments

Throughout trial, the parties commented on MacCarthy's criminal conviction arising from the accident. During his opening argument, MacCarthy's counsel asserted, "[w]hat we know following the accident is that Mr. MacCarthy was sentenced to 180 days in jail. He was released early. He'll tell you the reasons why, the facts and circumstances why he was released early. I think that's somewhat compelling. It tells you a little bit about who he is and his accountability." Later the trial court admitted into evidence a copy of MacCarthy's judgment of conviction for felony driving under the influence during Isom's counsel's direct examination of MacCarthy. The court stated it was not to be displayed to the jury, but Isom's counsel was permitted to question MacCarthy about it. Isom's counsel asked MacCarthy about the specifics of the judgment, including about his jail sentence, number of days served, and the restitution order imposed by the criminal court.

Regarding MacCarthy's criminal conviction, Isom's counsel asserted in closing argument that there was no evidence that MacCarthy had done anything to take responsibility for his "criminal conduct," as MacCarthy did not pay the full restitution amount the criminal court ordered him to pay. Isom's counsel averred that MacCarthy refused to take sufficient responsibility and was continuing to do so by arguing that Isom was 100 percent responsible for his injuries. Isom's counsel contended that MacCarthy owed a duty to Isom as a passenger in his vehicle and argued that Isom should not be blamed for his injuries the same way a victim of other crimes would not be blamed for what happened to them. MacCarthy's counsel did not object to these statements.

During MacCarthy's closing argument, his counsel stated, "[s]o I fully understand and I'm aware that Mr. MacCarthy was convicted of drunk driving, and it is a felony. I understand that. I've accepted that. Mr. MacCarthy has accepted that." MacCarthy's counsel later added, "[i]n the criminal arena, we already know Mr. MacCarthy's already taken responsibility for that. He's already said, 'yep, I did it. I'll do the time.' He did it. Paid the fine. He did it. [¶] But in this arena, well, he's able to fight for himself and he's able to say, 'I did it, but guess what, look what that guy did. He's the reason that we're here.' And that's what we're doing." MacCarthy's counsel then asked the jury to find Isom 100 percent responsible for his own injuries.

During Isom's closing rebuttal argument, the court instructed the jury, although no objection had been made, "we're not here punishing the crime, okay? He admitted that he did it. You all already know that. You heard it from his mouth and you heard the plea. But that has already been taken care of in criminal court, okay? This is civil. This is damages. This is all the things you've been hearing. No question that he got convicted. No question about any of that. You've got it, okay? But this is only about the civil damages."

## E.  Verdict

On May 27, 2021, the jury returned its special verdict, finding that MacCarthy was negligent in causing injury to Isom, and that MacCarthy's negligence was a substantial factor in causing Isom's harm. Further, the jury assigned 25 percent of responsibility to Isom for his injuries. Isom was awarded special and general damages totaling $20,636,313.44. After reducing the award by 25 percent for Isom's comparative negligence, the trial court entered judgment in the net amount of $15,477,235.08 for him. MacCarthy timely appealed the judgment.

## DISCUSSION

## A.  Asserted Evidentiary Errors

### 1.  *Standard of Review*

The trial court has broad discretion in determining the relevance of evidence. (*People v. Crittenden* (1994) 9 Cal.4th

83, 132.) The trial court also has discretion to exclude otherwise admissible evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time; or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, § 352.) We review a trial court's evidentiary rulings for abuse of discretion. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) "'Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 919.) A "miscarriage of justice" is shown where it appears "reasonably probable" that the appellant would have achieved a more favorable result in the absence of error. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*), citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

> 2. *Trial Court Did Not Abuse its Discretion in Admitting Photographs*

MacCarthy contends that the trial court abused its discretion by denying MacCarthy's motion in limine No. 7 to exclude all photographs of the accident scene and of Isom's injuries on the grounds that they were irrelevant, cumulative, and prejudicial to MacCarthy. Additionally, MacCarthy argues that the court allowed an excessive

10

number of photographs of Isom and his wife.  We conclude the trial court did not abuse its discretion.

"A motion in limine is made to exclude evidence before it is offered at trial on the ground that the evidence is either irrelevant or subject to discretionary exclusion as unduly prejudicial." (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1480–1481.)  "'The purpose of [such] a motion . . . is "to avoid attempt[ing] to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury.""" (*Condon–Johnson & Associates, Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392 .)  "We review a trial court's ruling on a motion in limine to exclude evidence for an abuse of discretion." (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295–296.)

"'The admission of allegedly gruesome photographs is basically a question of relevance over which the trial court has broad discretion.  [Citation.]  "A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value."' [Citation.]" (*People v. Hinton* (2006) 37 Cal.4th 839, 896.)  The trial court's discretion extends to the exclusion of cumulative evidence. (*Horn v. General Motors Corp.* (1976) 17 Cal.3d 359, 371, citing Evid. Code, § 352.)  However, evidence is not irrelevant solely because it is cumulative of other evidence. (*People v. Smithey* (1999) 20 Cal.4th 936, 974; see also *In re Romeo C.* (1995) 33 Cal.App.4th 1838,

1843 ["Evidence may be relevant even though it is cumulative; thus, the only ban on cumulative evidence is found in Evidence Code section 352"].)

Regarding the photographs of Isom in the hospital, there are five black and white photographs in total. While they show tubes and wires placed on Isom from different angles, they are not unnecessarily gruesome or inflammatory but show his condition in the hospital. Four additional photographs focused on Isom's face, also in black and white, were admitted at trial. Three of the photographs depict bruises, cuts, or swelling on Isom's face, but they are not unduly graphic. The fourth photograph appears to show his recovery from his facial injuries. The photographs were relevant to show the extent of Isom's injuries, and thus, they were probative to the issues at trial.

In addition to the hospital photographs, there is an x-ray of Isom's skull that one of Isom's treating physicians used to corroborate testimony concerning Isom's facial injuries. Visual images "are not cumulative simply because they illustrate facts otherwise presented through testimony." (*People v. Farnam* (2002) 28 Cal.4th 107, 185–186 [autopsy photographs were relevant and aided medical examiner's testimony].) Moreover, the x-ray itself is not gruesome or likely to inflame the passions of a jury needlessly.

Concerning the photographs of Isom and his family, MacCarthy objected only to the first photo on the ground that it was cumulative. The trial court admitted 14 photographs depicting Isom smiling beside his wife or

12

family, for example, at a restaurant, and at the beach. Although MacCarthy argues that the only motivation for introducing the photographs was to stir the jury's emotions and sympathies, it is not reasonably probable the jury would have reached a result more favorable to MacCarthy had these family photographs of Isom apparently enjoying his post-accident life been excluded. (*Cassim*, *supra*, 33 Cal.4th at p. 800.)

Next, MacCarthy asserts that the 176 photos taken by CHP of the accident scene were excessive and unduly prejudicial. To the extent that MacCarthy argues that the "sheer volume" of photographs admitted at trial was prejudicial, MacCarthy does not cite to any authority holding that the number of photographs automatically creates prejudice. The photographs were all taken at night. Consequently, they are very dark and do not show details visible in better light. The majority show roadway signs and markings, such as a stop sign, and the surrounding area where the crash occurred. While they provide information about the location of the crash, they are not at all gruesome. The photographs depicting MacCarthy's vehicle show damage from various angles, and although they show extensive damage, they are not graphic or inflammatory.[2]

---

[2]     MacCarthy cites to *Hartt v. County of Los Angeles* (2011) 197 Cal.App.4th 1391 (*Hartt*), in arguing that accident photographs may be unduly prejudicial in some circumstances. In *Hartt*, it was determined that the trial court acted within its discretion by finding that certain photographs would be prejudicial because of blood, police cars, and misleading perspective. (*Id*. at p. 1401.) The trial court allowed a

The trial court reasonably could have found that the evidence was relevant as to the force of the collision and impact, which would be indicative of Isom's injuries. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 449 [photographs of vehicles involved in accident probative to show force of collision].) Furthermore, they were probative to illustrate the CHP sergeant's testimony about the crash.

On this record, we cannot conclude that the court abused its discretion in admitting the photographs. Even assuming error, we conclude the admission of the accident scene photographs and photographs of Isom's injuries and family did not result in a miscarriage of justice. (Evid. Code, § 353, subd. (b).)

3.    *The Trial Court Properly Asked a Witness a Question Submitted by a Juror*
      a.    *MacCarthy Did Not Object to the Juror Question*

McCarthy argues that the trial court abused its discretion and prejudiced him when it read Dannye the juror question asking, "was . . . ever any type of drug besides

photograph of a trail where the subject accident occurred with prejudicial material digitally removed. (*Ibid.*) The plaintiffs "ha[d] not articulated any convincing reason to admit the 'unaltered' forms of the photos that would outweigh the unduly prejudicial effect of showing blood, the twisted carcass of [the plaintiff's] bicycle, a sheet used at the scene, and the police car situated diagonally across the trail." (*Ibid.*) Unlike in *Hartt*, MacCarthy does not establish that the accident scene photographs in this case contain comparable prejudicial material, such as blood or a sheet used at the scene.

14

alcohol and weed at the house?" MacCarthy asserts that by reading this question and allowing Dannye to answer, the court created a scenario where the jury was permitted to speculate what the other drugs could be and about MacCarthy's consumption of unspecified drugs. The record, however, does not show that MacCarthy objected to the juror question.

"'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' [Citation.] It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial. [Citations.]" (*Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776–777 (*Children's Hospital*); see also *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["The failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal"].)

After MacCarthy's redirect examination of Dannye, the trial court read numerous questions from the jury to her, including the question of whether there were drugs other than marijuana or alcohol at the residence. Prior to reading the juror questions, the record shows that an unreported bench conference was held. There is no record that MacCarthy objected to the subject juror question about other drugs, nor did he move to strike Dannye's response.

15

MacCarthy cites to *People v. McAlister* (1985) 167 Cal.App.3d 633 (*McAlister*), for the proposition that the lack of an objection to a juror question does not forfeit the issue for purposes of appeal.  In *McAlister*, "[t]he sole issue raised on appeal [was] whether the trial court committed prejudicial error in permitting jurors to *directly* question defense witnesses." (*Id.* at p. 636, italics added.)  During a criminal trial, the court permitted jurors to ask some witnesses questions themselves in open court.  (*Id.* at pp. 638–642.)  "In a proper case there may be a real benefit from allowing jurors to submit questions under proper control by the court.  However, in order to permit the court to exercise its discretion and maintain control of the trial, the correct procedure is to have the juror write the questions for consideration by the court and counsel prior to their submission to the witness." (*Id.* at p. 644.)  It was unnecessary for counsel to object to improper questions by a juror in order to preserve the right on appeal.  (*Ibid.*)  Given that the jurors were asking the questions themselves, "the risk of prejudice [was] too great to require counsel to be put to the choice of offending a juror by an objection or of letting improper or prejudicial testimony go in without the right to later review." (*Ibid.*)

In contrast to *McAlister*, there is no suggestion that the question about other drugs in this case was asked directly by a juror.  Rather, MacCarthy admits "[t]he court properly required juror questions to be submitted to the court in writing before they were read."  Thus, *McAlister* is

16

inapposite. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 ["'It is axiomatic that cases are not authority for propositions not considered.'"].) If MacCarthy had any objection to the juror question, he forfeited it by failing to show that he objected. (*Children's Hospital*, 97 Cal.App.4th at pp. 776–777.)

> b. *MacCarthy Does Not Establish the Trial Court Violated California Rules of Court, rule 2.1033*

MacCarthy further argues that the trial court violated California Rules of Court, rule 2.1033 by not allowing MacCarthy to object on the record to the question outside the jury's presence. We disagree.

California Rules of Court, rule 2.1033 states, "[a] trial judge should allow jurors to submit written questions directed to witnesses. An opportunity must be given to counsel to object to such questions out of the presence of the jury." "'[T]he words of a statute are generally the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] . . . "If the statute's text evinces an unmistakable plain meaning, we need go no further."'" (*DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 384, citing *In re C. H.* (2011) 53 Cal.4th 94, 100.) Furthermore, "we will not read a requirement into a statute that does not appear therein." (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 79

17

(*Moniz*).)  Here, California Rules of Court, rule 2.1033's plain language provides that counsel must be given an opportunity to object, out of the presence of the jury, to written juror questions for witnesses.  The Rule, however, does not contain any language stating that the opportunity to object must be on the record.  Moreover, MacCarthy does not cite any authority stating that the Rule must be interpreted to require the opportunity to object to be on the record.  We will not now read such a requirement into the Rule.  (*Moniz, supra*, 72 Cal.App.5th at p. 79.)

Although MacCarthy argues that the court did not give him an opportunity to object to the juror question outside the presence of the jury, MacCarthy fails to acknowledge that he had that opportunity during the bench conference that occurred before the questions were asked.  Indeed, statements made by the court indicate that the court generally took written questions from the jury and reviewed them with counsel before they were read.[3]  Furthermore,

---

[3]    The record shows the court gave the jury the following instructions after the examination of a different witness that testified before Dannye: "Ladies and gentlemen, always, as I think I told you, at the end of a witness's testimony -- and if I didn't tell you this, I'm telling you now -- if you have any questions that you would like to ask [the witness], you have your notepad, go to the back page, write the question down, give it to [the Courtroom Assistant], she'll bring it to me and we'll review it and ask [them]."  The court also told the jury prior to the parties' closing arguments: "If during the trial any of you had a question that you believed should be asked of a witness, you were instructed to write out the question and provide it to me through my courtroom staff.  I shared your questions with the attorneys, after which I decided whether the question could be asked."

MacCarthy offers no explanation for why he did not ask to have the court reporter record any objection he had during that conference.  "Where the record is silent we must presume the court correctly ruled based on what occurred in the unreported proceedings.  [Citation.]" (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 429.)  Based on the foregoing, MacCarthy does not show that the trial court violated California Rules of Court, rule 2.1033.

In any event, any error in permitting the juror question about other drugs was harmless.  Prior to the juror question being asked, Isom's counsel read an excerpt from Dannye's deposition transcript during her cross-examination concerning how she obtained MacCarthy's car keys.  This included reading a statement where Dannye allegedly told MacCarthy and Isom they should not drive, and instead they should get drugs and wait at the residence.  The jury already heard about the specter of unspecified drugs being used in the residence, in addition to regular alcohol consumption by the home's residents.  Under the circumstances, it is not reasonably probable that a result more favorable to MacCarthy would have resulted in the absence of the subject juror question.

## B. The Trial Court Properly Refused a Proposed Defense Instruction on the Meaning of a Nolo Contendere Plea

MacCarthy next claims that the trial court committed prejudicial error by refusing his proposed jury instruction on the effect of a nolo contendere plea. We find the court properly refused the instruction.

"The legal adequacy of jury instructions is a legal issue subject to the de novo standard of appellate review." (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 24.) "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).) "A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citation.]" (*Soule, supra*, at p. 580.)[4]

---

[4] Generally, to determine whether instructional error was prejudicial, we evaluate "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule, supra*, 8 Cal.4th at pp. 580–581.) In this regard, the evidence is viewed in the light most favorable to the party claiming error. (*Sesler v. Ghumman* (1990) 219 Cal.App.3d 218, 223.)

The instruction MacCarthy sought was not necessary to his case. MacCarthy admitted that he was driving under the influence when Isom was injured. At no time did MacCarthy explain, or was he questioned as to, why he entered into the nolo contendere plea. The only references to a nolo contendere plea appear in MacCarthy's judgment of conviction, but the term was not mentioned during trial. (*Barry v. Raskov* (1991) 232 Cal.App.3d 447, 458 [trial court under no obligation to give jury instruction if evidence is minimal and unsubstantial].)

MacCarthy argued the instruction was necessary to clarify his defense that Isom was the cause of his own injuries. However, this theory was adequately covered by the comparative fault instruction the court gave the jury based on CACI No. 405. There is no indication that jury was misled by receiving this instruction, instead of MacCarthy's proposed instruction, or that there was a miscarriage of justice. Indeed, the jury found that Isom was 25 percent at fault for his injuries, making clear that they understood that MacCarthy's plea did not require them to find MacCarthy 100 percent at fault.

## C. MacCarthy Forfeited Attorney Misconduct Claims by Failing to Object and Request Admonitions at Trial

MacCarthy contends that Isom's trial counsel engaged in multiple instances of misconduct during Isom's closing argument. However, MacCarthy admits that he did not

object to the alleged misconduct.  Because MacCarthy did not object, he is precluded from raising the issue of misconduct on appeal.

"In conducting closing argument, attorneys for both sides have wide latitude to discuss the case.  "'"The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom.  The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury."'"  [Citations.]'"  (*Cassim*, *supra*, 33 Cal.4th at p. 795.)  "An attorney who exceeds this wide latitude commits misconduct."  (*Id.* at p. 796.)  The reviewing court independently determines "whether it is reasonably probable [that the appellant] would have achieved a more favorable result in the absence of that portion of [the] closing argument now challenged."  (*Id.* at p. 802.)

"A party ordinarily cannot complain on appeal of attorney misconduct at trial unless the party timely objected to the misconduct and requested that the jury be admonished.  [Citation.]  The purpose of these requirements is to allow the trial court an opportunity to remedy the misconduct and avoid the necessity of a retrial; a timely objection may prevent further misconduct, and an admonition to the jury to disregard the offending matter may eliminate the potential prejudice."  (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1411–1412 (*Rayii*); see also

22

*Cassim*, *supra*, 33 Cal.4th at p. 794. ["In addition to objecting, a litigant faced with opposing counsel's misconduct must also 'move for a mistrial or seek a curative admonition . . .'"].) "The failure to timely object and request an admonition waives a claim of error unless the misconduct was so prejudicial that it could not be cured by an admonition [citations], an objection or request for admonition would have been futile [citation] or the court promptly overruled an objection and the objecting party had no opportunity to request an admonition [citation]. Attorney misconduct is incurable only in extreme cases." (*Rayii*, *supra*, 218 Cal.App.4th at p. 1412.)

Because MacCarthy did not object to the complained of statements made by Isom's counsel, or request an admonition or move for a mistrial, MacCarthy forfeited this issue. (*Rayii, supra*, 218 Cal.App.4th at pp. 1411–1412.) As to MacCarthy's claim that it was improper for Isom's counsel to extensively question him about the details of his criminal conviction and use the evidence to support Isom's closing argument, MacCarthy also did not object to any of the relevant questions. To the contrary, MacCarthy's counsel highlighted his criminal conviction during opening and closing arguments. MacCarthy's theory of the case asked jurors to find that although MacCarthy was obviously intoxicated and drove under the influence, Isom should have known not to get into the vehicle with him. Thus, the decision to not object to the details of his conviction may have been strategic. Consequently, as with his complaints

23

about Isom's closing argument, MacCarthy forfeited this claim.  (*Id.* at p. 1412.)

In asserting that his claims should still be reviewed on the merits, MacCarthy argues that there were flagrant and repeated instances of misconduct.  However, MacCarthy "has not shown that the purported misconduct was so persistent or egregious as to justify the conclusion that it was incurable."  (See *Rayii*, *supra*, 218 Cal.App.4th at p. 1412.)  Nothing in the record suggests that objections would have been futile.  (See *People v. Fuiava* (2012) 53 Cal.4th 622, 680 [defendant forfeited claims of prosecutorial misconduct by failing to object in trial court, where "the record d[id] not establish that properly framed objections would have been in vain or provoked any 'wrath' on the part of the trial court . . ."].)  Counsel cannot silently sit at trial, denying the court an opportunity to stop or remedy misconduct, and then seek a reversal on appeal.  (See *Rayii*, *supra*, 218 Cal.App.4th at pp. 1411–1412.)  Otherwise, trial attorneys could deliberately refrain from objecting to evidence that supports their theory of the case, and if the theory does not result in the desired verdict, seek to overturn it on the basis of the objections never made.

The conduct of the counsel in the case on which MacCarthy primarily relies, *Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341 (*Simmons*), is distinguishable.  *Simmons* involved repeated instances of misconduct from the plaintiffs' counsel who "from the very beginning of the trial embarked on a campaign of hate,

24

vilification and subterfuge for the sole purpose of prejudicing the jury against [the defendant]." (*Id.* at p. 351.) Plaintiffs' counsel abused defense witnesses by accusing them of wrongful conduct with no factual basis. Counsel also told the jury that the defendant railroad would lie, cheat, steal, elicit perjury during trial, that the railroad believed pedestrians should be damned when it came to protecting them from train accidents, and that the railroad preferred older victims of train accidents because the damage awards were lower. (*Id.* at pp. 351–352.) Plaintiffs' counsel encouraged the jury to award compensatory damages so large that they would be punitive in nature. (*Id.* at pp. 354-355.) Defense counsel "objected to much of plaintiffs' counsel's actions and in some cases asked for admonitions." (*Id.* at p. 355.) However, the record made it clear that further objections "would have overemphasized the objectionable material and would have alienated the jury." (*Ibid.*) Here, MacCarthy complains of several discrete statements made in Isom's closing argument, to which no objections were made. This case does not present the flagrant and repeated instances of misconduct in *Simmons*.

In addition, MacCarthy argues his misconduct claims were not forfeited as to the golden rule arguments and appeals to community safety because he filed a motion in limine seeking to preclude these arguments. The motion in limine did not specify any particular evidence or argument to be excluded. "A motion in limine to exclude evidence is not a sufficient objection unless it was directed to a particular,

identifiable body of evidence and was made at a time when the trial court could determine the evidentiary question in its appropriate context." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1675.)  Here, the court was unaware of what statements would be made in closing argument when MacCarthy filed the motion in limine. Therefore, MacCarthy's motion in limine did not preserve the misconduct issues for appeal.  (*Ibid.*; see also *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1184 ["if the evidence presented during trial is substantially different from that presented at the hearing on the motion in limine or included in an offer of proof, it is incumbent on the party who made the motion to renew the objection to the evidence"].)  MacCarthy also did not request curative admonitions for the allegedly improper arguments after they were made.

Lastly, MacCarthy argues that the trial court had an affirmative duty to counteract the alleged misconduct, even though MacCarthy did not object.  However, MacCarthy does not cite any binding authority holding that the trial court had a sua sponte duty to cure what McCarthy perceives as misconduct during closing argument.  (See *People v. Carrera* (1989) 49 Cal.3d 291, 321 ["[A] trial court has no sua sponte duty to control prosecutorial misconduct . . ."].)

### D.    There is No Cumulative Error

MacCarthy lastly contends that cumulative error requires reversal.  As explained above, MacCarthy has

forfeited many of his contentions, and to the extent he preserved others, he fails to show prejudicial error.  (*People v. Williams* (2015) 61 Cal.4th 1244, 1291 ["We have either found no error or, in those instances where error has been . . . assumed, no prejudice"].)  For the same reasons, we reject his claim that he was prejudiced by the cumulative effect of the asserted errors.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

Mori, J.

We concur:

CURREY, P. J.

COLLINS, J.